Edward M. GILBERT, Plaintiff,

v.

Andre MEYER and Lazard Freres &
Co., Defendants.

No. 72 Civ. 2302.

United States District Court,
S. D. New York.

June 28, 1973.

Curtis, Mallet-Prevost, Colt & Mosle, New York City, for plaintiff; Peter E. Fleming, Jr., John E. Sprizzo, Alan B. Sparer, New York City, of counsel.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendants; Simon H. Rifkind, Edward N. Costikyan, Max Gitter, Warren M. Green, New York City, of counsel.

## OPINION

TENNEY, District Judge.

This case is before the Court on the motion of defendants Andre Meyer and Lazard Freres & Co. (hereinafter "Lazard") for summary judgment pursuant to Fed.R.Civ.P. 12(b) and 56(a). For the reasons set out *infra*, the motion is granted.

Plaintiff, Edward M. Gilbert, at all relevant times, was president and largest shareholder of E. L. Bruce Co., Inc. (hereinafter "Bruce"). Defendant Lazard is a major international investment banking institution and, at all relevant times, defendant Meyer was one of its leading partners. The complaint alleges two causes of action: (1) a violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1970), and Rule 10b–5, 17 C.F.R. § 240.10b–5 (1971), promulgated thereunder; and (2) a breach of fiduciary duty resulting

in a constructive fraud upon plaintiff based upon the law of the state of New York. Jurisdiction is alleged pursuant to § 27 of the Securities Exchange Act, 15 U.S.C. § 78aa (1970), and this Court's pendent jurisdiction over state law claims.

The complaint recounts a complex and questionable scheme to merge Celotex Corporation (hereinafter "Celotex") into Bruce to the great profit of both Gilbert (then an officer of Bruce) and his alleged partners Meyer and Lazard, and of the ultimate "double-cross" of Gilbert by Meyer and Lazard. Briefly, the facts adduced are as follows.

Sometime in early 1960, Lazard, through Meyer, became financial adviser to both Bruce and Gilbert. Plaintiff asserts that this relationship gave rise to fiduciary obligations and responsibilities. Late that same year, Lazard, at Meyer's direction, exchanged $2,000,000 for Bruce convertible debentures in that amount. In the fall of 1961, Gilbert devised a plan to personally acquire control of Celotex by making purchases of its common stock on the open market and then to merge Celotex into Bruce. At this point Gilbert attempted to obtain financial support for his project.

It is then alleged that as a result of the confidential and fiduciary relationship existing between plaintiff and defendants, Gilbert divulged his plan to Meyer and Lazard. They considered the plan financially sound and agreed to provide all the necessary financial support on the condition that Gilbert exclude all other investors from the scheme. All three parties then allegedly agreed to the details of the plan: that Gilbert would personally purchase the 500,000 shares of Celotex required to gain control; that Meyer and Lazard would provide funding up to an amount equal to the total cost of the first 250,000 shares purchased by Gilbert; that after acquisition of the Celotex shares, Gilbert, Meyer and Lazard would convince the Bruce Board of Directors to authorize the tender of new Bruce convertible debentures for all of the outstanding shares of Celotex; and that the new Bruce convertible debentures would be valued at least 50% in excess of Lazard's investment in the purchase of the first 250,000 shares of Celotex. It allegedly was further agreed that all of the Celotex shares acquired would be voted in favor of the merger and that, understandably, the venture would not be reduced to writing and would remain known only to Gilbert, Meyer and Lazard.

The object of the plan was, naturally, profit. Meyer and Lazard stood to gain at least 50% over their investment. Gilbert, since he was barred by law from dealing at a profit with himself (as an officer of Bruce), would profit nonetheless, and not insubstantially, from the increase of his equity in Bruce resulting from an exchange of his Celotex stock (at Gilbert's cost) for the New Bruce convertible debentures.

Having agreed upon the terms of the venture, Gilbert set the plan in motion by purchasing more than $10,000,000 worth of Celotex common stock between late 1961 and May 28, 1962. The complaint alleges that when Gilbert asked defendants to supply the promised funds they assured him of their support but first required him to purchase, for $2,000,000, one-half of the Bruce debentures they had acquired in 1960 (thus realizing a profit of $1,000,000). Then, plaintiff claims, after he agreed to this new condition and paid defendants $1,350,000 in cash (and gave two $325,000 notes), defendants purchased from him, at his cost, 87,000 of the Celotex shares he had already acquired.

Despite the lack of financial support, Gilbert claims he had no choice but to continue with the plan. In May 1962, Gilbert again asked defendants for their promised support and again he was assured of that support only after buying the second half of the Bruce debentures, this time paying $2,347,354 ($1,347,354 over defendants' cost). Defendants then purchased an additional 36,000 of Gilbert's Celotex shares at his cost.

On May 28, 1962, Gilbert received margin calls in the approximate amount of $3,900,000. When defendants allegedly refused to help him meet these calls, Gilbert panicked and "without authority borrowed $1,900,000 from Bruce to meet the calls" (Complaint ¶ 23). Thereafter, plaintiff alleges, on information and belief, that defendants further violated their fiduciary obligations by arranging for, and aiding in, the merger of Celotex into Jim Walter Corporation rather than Bruce.

Plaintiff requests the following relief: (1) an accounting of profits realized by defendants' sale of the Celotex shares to Jim Walter Corporation; (2) an accounting of, and a constructive trust imposed upon, profits obtained by defendants in facilitating the sale of Celotex shares to Jim Walter Corporation; (3) a constructive trust imposed on all monies obtained by defendants to their unjust enrichment as a result of plaintiff's "forced" purchases of $2,000,000 of Bruce debentures; (4) an order, pursuant to § 29(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78cc(b) (1970), declaring defendants' sale to plaintiff of the $2,000,000 of Bruce debentures null and void and directing restitution of the purchase price; (5) $25,000,000 in damages as a result of defendants' constructive fraud; and (6) an accounting of plaintiff's losses sustained as a result of defendants' violation of their fiduciary duties in violation of the securities laws under the joint venture and as plaintiff's investment advisors.

The instant suit is not the first litigation resulting from the alleged plan to acquire Celotex. Gilbert was first convicted for embezzling the funds he "borrowed" from Bruce. After his release from prison, he commenced an action in the New York Supreme Court against the very same defendants for breach of a joint venture agreement. In that action, defendant's motion for summary judgment was granted on the grounds that plaintiff's claim was time barred. Both the Appellate Division and the Court of Appeals affirmed. In addition to the instant suit, plaintiff has now filed a second action in the New York Supreme Court against the very same defendants for breach of fiduciary duty and constructive fraud.

Defendants now move this Court for summary judgment on three grounds: (1) the 10b–5 claim is barred by the statute of limitations; (2) the action is barred by *res judicata* and collateral estoppel; (3) the complaint fails to state a claim upon which relief may be granted.

### Statute of Limitations

■ Defendants contend that the 10b–5 claim asserted by plaintiff is time barred because it was not brought within six years in accordance with N.Y. C.P.L.R. § 213 (McKinney 1972). Plaintiff, on the other hand, claims that the proper limitation period is ten years in accordance with N.Y. C.P.A. § 53 (1939) and N.Y. C.P.L.R. § 218(b) (McKinney 1972) and that, therefore, the action is timely. The cause of this dispute is the lack of designated time limitation within either § 10(b) or Rule 10b–5.

> The law is well settled, however, that ". . . when Congress created a federal right but did not prescribe a period for its enforcement, Federal courts will borrow the period of limitation prescribed by the state where the court sits . . . ." Moviecolor Limited v. Eastman Kodak Co., 288 F.2d 80, 83 (2d Cir.), cert. denied, 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed.2d 26 (1961).

This principle applies to actions under § 10(b) and Rule 10b–5. *See, e. g.,* Fischman v. Raytheon Mfg. Co., 188 F.2d 783, 787 (2d Cir. 1951).

To this Court's knowledge, the only New York statute of limitations held applicable to 10b–5 actions in this circuit has been the six-year limitation contained in either N.Y. C.P.A. § 48 (1939) or N.Y. C.P.L.R. § 213 (McKinney 1972). *See, e. g.,* Klein v. Auchincloss, Parker & Redpath, 436 F.2d 339, 341

(2d Cir. 1971); Klein v. Bower, 421 F. 2d 338, 343 n. 4 (2d Cir. 1970); Fischman v. Raytheon Mfg. Co., *supra*, 188 F.2d at 787; Marth v. Industrial Incomes Inc. of North America, 290 F. Supp. 755 (S.D.N.Y.1968). Plaintiff contends, however, that since his cause of action arose prior to the effective date of the C.P.L.R.—this was determined by the Appellate Division in Gilbert v. Meyer & Lazard Freres, 37 A.D. 2d 938, 939, 325 N.Y.S.2d 881, 882 (1971)—and since his claim is equitable in nature, the proper limitation period is 10 years as provided for by N.Y. C.P.A. § 53 (1939). The Court disagrees.

Plaintiff relies heavily on the recent case of Klein v. Bower, 421 F.2d 338 (2d Cir. 1970). That action was a private damage suit for, *inter alia*, damages resulting from a violation of § 7 of the Securities Exchange Act of 1934, 15 U.S.C. § 78(g) (1970). Although defendant had pleaded New York's six-year statute of limitations as a bar to the action, plaintiff apparently argued that the ten-year equity statute applied because the prayer for relief requested rescission and an accounting. The Second Circuit found the six-year statute controlling, holding that plaintiff's argument was

> ". . . without merit. New York courts have long held that a prayer for equitable relief will not bring an action under the longer limitations period for equity actions when full relief can be granted at law. . . . The prayer for an accounting . . . and . . . for rescission . . . are not enough to bring the action within the longer equity period. Appellant's unsupported allegations to the contrary notwithstanding, damages are sufficient and an accounting and rescission are unnecessary to provide full relief." 421 F.2d at 344.

Plaintiff concludes that under the court's decision in the *Klein* case, the law in this circuit is that the ten-year limitation period applies to 10b–5 actions when (1) the action is one to which the New York courts would apply the ten-year statute—*i. e.*, an equity action arising prior to the effective date of the N.Y. C.P.L.R.—and (2) the action is one in which full relief cannot be had at law. Applying that "rule" to the instant case, plaintiff contends that the ten-year statute is applicable because the suit is grounded in violations of equitable duties and he cannot get full relief in an action at law.

■ In the first instance, an objective reading of the *Klein* case reveals that no such "rule" was promulgated. That court merely analyzed appellant's argument—which plaintiff here categorizes as a "rule"—and found it wanting in at least one respect, *viz.*, that appellant's remedy at law was adequate. It had no occasion, therefore, to determine which limitation period would be applicable if the remedy at law had been inadequate. It would not be improper, however, to characterize the instant plaintiff's "rule" as a legitimate inference to be drawn from the opinion. Assuming then, *arguendo*, that plaintiff's analysis of the law in this circuit is correct, it is clear to this Court that full relief at law is available in this action.

Plaintiff, in support of his claim, argues as follows:

> "[A]n action at law could not give Gilbert 'full relief', as the New York courts, and Klein v. Bower, require. . . . [E]ven if Gilbert's losses could be recompensed in an action at law for damages, Gilbert would remain entitled to an accounting of the defendants' profits and the imposition of a constructive trust thereon for his benefit. Only equity can provide such relief which is essential to 'full relief'. As a result, the ten-year statute of limitations is applicable." (Plaintiff's Memo. in Opp. at 14.)

If this action were being pursued in the New York courts, or if the jurisdiction of this Court were invoked under the diversity statute so that New York law controlled, this claim would undoubtedly be correct. *See, e. g.*, Coane v. Ameri-

can Distilling Co., 298 N.Y. 197, 206–207, 81 N.E.2d 87, 90 (1948). However, therein lies the fallacy in plaintiff's reasoning; he is determining the adequacy of his legal remedies under New York law. This is in direct conflict with the rule laid down by the Supreme Court in Russell v. Todd, 309 U.S. 280, 60 S.Ct. 527, 84 L.Ed. 754 (1940).

> "The test of the inadequacy of the legal remedy prerequisite to resort to a federal court of equity *is the legal remedy which federal rather than state courts afford.*" 309 U.S. at 286, 60 S.Ct. at 530 (emphasis added).

The test, therefore, is not what legal remedies are available to plaintiff in New York courts, rather it is what legal remedies are available to plaintiff in this federal district court.

■■ Although it is well established that federal courts may employ any of the traditional forms of equitable remedies in granting a plaintiff relief in an action under the securities laws—*see, e. g.,* Deckert v. Independence Shares Corp., 311 U.S. 282, 61 S.Ct. 229, 85 L. Ed. 189 (1941); SEC v. Manor Nursing Centers, Inc., 458 F.2d 1082 (2d Cir. 1972)—the circumstances of the instant case do not warrant such action. A constructive trust will generally arise when a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it. Cherno v. Dutch American Mercantile Corp., 353 F.2d 147, 153 (2d Cir. 1965); Restatement, Restitution § 160 at 640 (1937). In this sense, "[a] constructive trust is a fiction imposed as an equitable device for achieving justice." Healy v. Commissioner of Internal Revenue, 345 U.S. 278, 282, 73 S.Ct. 671, 674, 97 L.Ed. 1007 (1953).

This court, unlike the New York courts, need not resort to a "legal fiction" to afford plaintiff relief upon the facts alleged in the complaint. Thus, whereas a New York Court, acting upon a theory of constructive fraud or breach of fiduciary duty, would have to impose a constructive trust upon the monies received by defendants for the Bruce debentures in order to afford plaintiff relief, this court, acting upon a violation of § 10(b) and Rule 10b–5, can directly award to plaintiff money damages, enter a judgment to that effect and enforce execution of that judgment without the need for equity's intervention. Indeed, in all instances in the complaint where plaintiff has requested the imposition of a constructive trust this Court can afford plaintiff full relief by awarding money damages.

■ Plaintiff also claims that the equitable remedy of accounting is necessary to afford him full relief in the instant action.

> "The necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies, is . . . the absence of an adequate remedy at law. . . . The legal remedy cannot be characterized as inadequate merely because the measure of damages may necessitate a look into [defendant's] business records." Dairy Queen, Inc. v. Wood, 369 U.S. 469, 478–479, 82 S.Ct. 894, 900, 8 L.Ed.2d 44 (1962).

Once again, this Court, unlike the New York courts, does not have to resort to equitable remedies in the instant case. Rather, federal courts are authorized to award, as part of the damages to which plaintiff is entitled, any profits reaped by defendants in violation of § 10(b) and Rule 10b–5. Affiliated Ute Citizens v. United States, 406 U.S. 128, 155, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). Furthermore, even in New York

> ". . . accounting is merely a method of calculating the amount of damage and does not of itself stamp the action as equitable. The true criterion is whether the remedy at law is adequate, whether equity's aid is demanded." Coane v. American Distilling Co., *supra,* 298 N.Y. at 207, 81 N. E.2d at 90.

It is clear that *in the federal courts* equity's aid is not required. The amount

of profit, if any, which defendants have gained from a transaction in violation of the securities laws can be easily determined through pre-trial discovery or by the appointment of a special master.

█ It appears to this Court that plaintiff is attempting to avoid the statute of limitations merely by invoking the "magic" words of equity. That strategy will not, however, prevail.

"At common law, formalism was zealously guarded. Actions were either legal, that is, in the law courts, or equitable, in the courts of chancery. Consequently, the relief demanded by the moving party had to be consistent with the theory of its action. Today, in the face of rules ostensibly eliminating these distinctions, it would be incompatible to permit a period of limitation to hinge on the turn of a word fixed by a plaintiff at the pleading stage. And for this court to speculate on such a maneuver would compound the error and ignore the true standard in determining the nature of jurisdiction. In the final analysis, recourse should be had not to the language of the pleader's Complaint but to the terms of the federal act granting the right of action and to the remedy which the court can supply." Tobacco & Allied Stocks v. Transamerica Corp., 143 F.Supp. 323, 326–327 (D.Del.1956), aff'd, 244 F.2d 902 (3d Cir. 1957).

Since this Court has already demonstrated that money damages will suffice to render plaintiff whole if he were to succeed on the merits of this action, this case falls squarely within the holding of the Second Circuit in Klein v. Bower, *supra,* and, thus, plaintiff's 10b–5 private damage action is barred by the six-year limitation period in N.Y. C.P. L.R. § 213.

Even if, however, plaintiff is correct in asserting that an equitable accounting is needed to ensure him full relief, there is at best a concurrency of equitable and legal jurisdiction. Plaintiff admits that his losses may be recouped in an action for damages. Indeed, the complaint contains a demand for $25,000,000 in damages.

"The decisive feature, then, which gives jurisdiction the flavor of concurrency, is not the narrow question of whether formal relief requested in a particular action is equitable or legal, primary or incidental, but the broader determination of whether the federal right in issue may be judicially enforced in any action by means both legal and equitable.

\* \* \* \* , \* \*

"I therefore believe rights accruing under Rule X–10B–5 are enforceable at law and in equity and provide a proper case for concurrent jurisdiction in the federal courts." Tobacco & Allied Stocks v. Transamerica Corp., *supra,* 143 F.Supp. at 327.

*See, also,* Saylor v. Lindsley, 302 F.Supp. 1174, 1182–1183 (S.D.N.Y.1969), rev'd on other grounds, 456 F.2d 896 (2d Cir. 1972). Plaintiff argues, however, that *Tobacco* is inapplicable to the case at bar because the result there rested upon the Delaware law of concurrent jurisdiction which is in conflict with New York law. The Court does not agree. The Delaware cases cited in footnote 1 of the decision are used only in reference to federal cases wherein jurisdiction is based solely upon diversity of citizenship. That portion of the opinion which deals with concurrency of legal and equitable jurisdiction is derived from a footnote in Overfield v. Pennroad Corp., 146 F.2d 889, 895 n.12 (3d Cir. 1944), which in turn is a direct paraphrase of 1 Pomeroy, Equity Jurisprudence § 217 (5th ed. 1941).

█ Furthermore, we are not dealing here with a cause of action arising under the laws of New York. It is the federal law as to concurrency of jurisdiction which controls. In this regard, the Supreme Court has held that

". . . where resort was had to equity in aid of a legal right, equity, following the law, would refuse its aid if the legal right had been barred by

the applicable statute of limitations." Russell v. Todd, *supra,* 309 U.S. at 288, 60 S.Ct. at 531 (citations omitted).

If plaintiff is entitled to an accounting at all, it is only in aid of his legal right to damages for a violation of Rule 10b–5.

Ordinarily, the Court would end its inquiry at this point and grant defendants' motion for summary judgment without further discussion. But dictum in a recent decision of the Second Circuit Court of Appeals would seem to lend some credence to plaintiff's claim that a 10b–5 action based upon a constructive, rather than actual, fraud is entitled to the benefit of the longer ten-year period of limitations.

■ In a footnote to his opinion in Klein v. Shields & Co., 470 F.2d 1344 (2d Cir. 1972), Judge Timbers stated:

> "The more favorable ten year period relating to general equity actions for causes of action occurring prior to 1963, N.Y.Civ.Prac.Act, § 53 (1939), made applicable by N.Y.Civ.Prac.Law § 218(b) (McKinney 1972), would govern here only if the claim alleged constructive fraud. On a claim of actual fraud, the provisions of N.Y.Civ. Prac.Law §§ 213(9), 203(f) apply." Klein v. Shields & Co., *supra,* at 1346 n. 2.

There are two important observations to be made regarding the footnote, however. The first, and perhaps the most important, observation is that the footnote is clearly not a part of the *ratio decidendi* of the case and is, therefore, merely dictum. The second is that Judge Timbers' conclusion is supported only by a New York case, McCabe v. Gelfand, 58 Misc.2d 497, 295 N.Y.S.2d 583 (Sup.Ct.1968), which merely holds that, in New York, the ten-year statute of limitations applies to a cause of action in equity for constructive fraud arising prior to the effective date of the N.Y. C.P.L.R. Since this Court is not bound by mere dictum, and since it has already been determined that New York courts would not apply the ten-year statute, as discussed *infra,* no further discussion of this point is required.

### *Res Judicata and Collateral Estoppel*

Although both plaintiff and defendants have presented detailed arguments on the applicability of the doctrines of *res judicata* and collateral estoppel to the merits of plaintiff's action, the Court finds it unnecessary to make such a broad determination. The discussion will be limited to the effect of the prior state court judgment on the present determination of the statute of limitations appropriate to plaintiff's federal claim. Plaintiff's contentions to the contrary notwithstanding, the state adjudication does operate as collateral estoppel on his federal claim.

> "While because of the exclusive jurisdiction of the federal courts to enforce the Securities Exchange Act of 1934, § 27, the state court will not be able to determine certain claims asserted in the federal suit but not advanced in the state action, it can authoritatively determine the common law claims and perhaps also defenses such as *res adjudicata* and the statute of limitations that may be dispositive of the 1934 Act claims as well." Klein v. Walston & Co., 432 F.2d 936, 937 (2d Cir. 1970).

Assuming, *arguendo,* that in the instant suit

> ". . . the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigat-

ed and determined." Cromwell v. County of Sac, 94 U.S. 351, 353, 24 L. Ed. 195 (1876).

In pursuing this inquiry, it has become clear to this Court that the issue of whether plaintiff is entitled to the ten-year period of limitation under New York law has been answered, in the negative, by the prior state adjudication, and that, therefore, even under plaintiff's "rule", the six-year statute controls.

The original complaint in the state court litigation attempted to plead a cause of action for breach of a joint venture agreement. Upon granting defendants' motion for summary judgment, the New York Supreme Court, Special Term, found that no joint venture had been established; that at best, plaintiff had made out a cause of action for breach of contract and that, therefore, the six-year statute of limitations applied and barred the action.

The decision was appealed to the Appellate Division. In his briefs to that court, plaintiff, for the first time, argued that a fiduciary relationship existed between himself and defendants; that such relationship had been breached; that he was entitled to equitable relief; and that, therefore, the ten-year limitation period was appropriate. (*See, e. g.*, Brief for Plaintiff-Appellant at 19–21; Reply Brief for Plaintiff-Appellant at 18–19.) Plaintiff further argued that the decision of the Supreme Court was based upon the "theory of the pleadings doctrine" rather than a fair and liberal reading of his complaint. (Reply Brief for Plaintiff-Appellant at 20–23.) The Appellate Division affirmed the previous decision stating:

"[O]ur affirmance of the order of Special Term is not based upon an adherence to any technical requirements as to the form of pleading. Rather, we affirm because upon the motion for summary judgment plaintiff completely failed to show any facts indicating that an equitable cause of action exists." Gilbert v. Meyer, 37 A.

D.2d 938, 325 N.Y.S.2d 881, 882 (1971).

This decision, in turn, was appealed to the New York Court of Appeals. There, plaintiff further developed his theory of breach of fiduciary duty and constructive fraud and continued to assert that the ten-year limitation period should apply. (Brief for Plaintiff-Appellant at 37–52.) The Court of Appeals affirmed the Appellate Division's decision without an opinion. Gilbert v. Meyer, 31 N.Y.2d 725, 337 N.Y.S.2d 525, 289 N.E.2d 563 (1972).

■ A comparison of the complaints filed in the state court and this court reveals virtually no distinction as to the ultimate facts pleaded in each instance. The only difference lies in the theory of the action. It is clear that the two New York appellate courts were presented with, considered and determined the very same issue which confronts this Court—*i. e.*, which state statute of limitations is applicable to the facts in plaintiff's action—and that, therefore, plaintiff is collaterally estopped from asserting that the New York courts would apply the ten-year limitation period to this action.

Defendants also contend that the complaint fails to state a claim upon which relief can be granted. However, since other grounds exist which justify the granting of defendants' motion, it is not necessary for the Court to make such a determination.

### *Section 29(b) Claim*

■ Plaintiff also seeks to have this Court declare his purchase of $2,000,000 of Bruce debentures from defendants void as a contract in violation of the securities laws, to rescind that sale and to have defendants make restitution of the purchase price. In the first instance, this Court is of the opinion that since damages are available to plaintiff under § 10(b) and Rule 10b–5 his request for a declaratory judgment, rescission and restitution are unnecessary. Even if they were necessary, however, this

claim, too, would be time barred. Although the limitations period contained in § 29(b) does not apply because the transaction in question did not involve brokers, the claim is nonetheless barred by the same period which bars the alleged violation of Rule 10b–5 underlying the alleged illegality of the transaction.

### Pendent State Causes of Action

Since plaintiff's federal claim is dismissed, there is no longer any basis for this Court's pendent jurisdiction and, therefore, plaintiff's state law claims are likewise dismissed. Iroquois Industries, Inc. v. Syracuse China Corp., 417 F.2d 963, 970–971 (2d Cir. 1969).

Accordingly, defendants' motion for summary judgment dismissing plaintiff's cause of action for violations of § 10(b) and Rule 10b–5 as being time barred is granted, and, necessarily, plaintiff's pendent state claims are dismissed for lack of jurisdiction.

So ordered.