**Arthur COHEN, Plaintiff,**

v.

**Irwin E. GOODFRIEND, et alia, Defendants.**

No. CV–85–2021.

United States District Court,
E.D. New York.

March 31, 1986.

Sheber, Pomerantz, Slotnik & Hamburg by Sol Slotnik, New York City, for plaintiff.

Ferber, Greilsheimer & Chan by Robert Chan, New York City, for defendants Goodfriend, Borden and Goodfriend & Borden, P.C.

## MEMORANDUM AND ORDER

SIFTON, District Judge.

This is an action alleging various statutory and common law causes of action arising out of the acquisition by Valley View Enterprises, a partnership consisting of plaintiff, defendant Goodfriend, defendant Borden, and Bernard Friedman, in 1980 of a restaurant and land in Warwick, New York. Jurisdiction is based on section 22(a) of the Securities Act of 1933, as amended (the "Securities Act"), 15 U.S.C. § 77v(a); section 27 of the Securities Exchange Act of 1934, as amended (the "Securities Exchange Act"); and principles of pendent jurisdiction. This matter is now before the Court on the motion of defendants Goodfriend, Borden, and the accounting firm of Goodfriend & Borden for an order:

(1) dismissing plaintiff's first, second, and third counts pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted,

(2) dismissing plaintiff's third, fourth, ninth, and eleventh counts pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction,

(3) dismissing plaintiff's first through fourth counts pursuant to Rule 9(b) for failure to plead fraud with the required particularity,

(4) dismissing plaintiff's ninth and tenth counts pursuant to Rule 12(b)(6) on the grounds that they are barred by the statute of limitations,

(5) striking paragraphs (a)(2) and (a)(3) of plaintiff's demand for relief pursuant to Rule 12(b)(6) on the ground that there is no basis in law for granting such relief, and

(6) for such other and further relief, including a decision dismissing the complaint under Rule 56(b), as may seem just and proper.

The following statement of the facts of this case is derived from plaintiff's complaint and his affidavit submitted in response to this motion.

In 1980, defendants Goodfriend, Borden, and Goodfriend & Borden, an accounting partnership, became plaintiff's personal accountants, as well as the accountants for plaintiff's business, Columbia Equipment Inc. ("Columbia"). In November 1980, defendants advised plaintiff that Columbia had earned substantial gross income for its fiscal year ending in November 1980 and recommended that it would be economically beneficial for Columbia to incur additional expenses as "salary" for plaintiff, which Columbia could deduct from its taxes as a business deduction. Plaintiff accepted the recommendation.

Defendants also advised plaintiff that he should invest in a tax "shelter" to minimize the tax impact of the additional salary he would receive from Columbia. Apparently in pursuit of this objective, defendants advised plaintiff to purchase a limited partnership interest in a partnership to be formed and known as Valley View Enterprises (the "partnership"). The partnership was to be formed for the purpose of purchasing a restaurant for $700,000. According to plaintiff, the defendants represented to him that he would be a limited partner in the partnership, that he would own 49% of the partnership in return for his investment of $62,500, that his personal liability would be limited to his investment of $62,500, and that the investment would generate certain tax benefits in the form of ordinary tax deductions and investment credits, which would enable Cohen to save $27,440 in 1980, $26,132 in 1981, $18,605 in 1982, $13,677 in 1983, and $11,623.05 in 1984. In addition to plaintiff's allegations of oral representations, Exhibit A to plaintiff's affidavit in opposition to defendants' motions, is a letter to plaintiff from defendant Goodfriend dated November 9, 1981, reconfirming that plaintiff is held harmless with respect to any liability on a mortgage of $600,000 owed Indian Valley Management Inc. by Valley View Enterprises. The letter states: "This liability is solely the responsibility of Irwin Goodfriend and Steven Borden. Your total liability in this deal is the $62,500."

Defendants engaged defendant Schwartz, an attorney, to prepare all of the legal papers pertaining to the transaction. However, instead of preparing a limited partnership agreement, Schwartz prepared a certificate of general partnership, which plaintiff signed and returned. Plaintiff claims that he was unaware that he was becoming a general partner instead of a limited partner when he signed the document. The certificate, a copy of which is attached as Exhibit A to defendants' motion, does not specify that it is a general partnership agreement.

In connection with the foregoing transactions, plaintiff claims that the defendants deliberately or recklessly failed to disclose to plaintiff the following information:

(1) that no formal appraisals of the property located at Valley View had been made,

(2) that no mortgage or other documents were ever filed to protect the partnership's interest in the property and that the partnership never made any payments to protect its interests in the purchase of the property,

(3) that the $700,000 purchase price for the property represented an increase of $340,000 over a purchase price for the property which had been negotiated by the same defendants with others less than a year before the transaction in which Cohen invested,

(4) that the estimates regarding the value of the property and the purchase price to be paid therefor were arbitrary and inflated without any economic justification;

(5) that the agreements entered into between Valley View and the seller of the property were not the result of "arms length" negotiations, but were artificial and arbitrary estimates prepared solely for the purposes of generating dubious tax deductions;

(6) that the assets located on the property were not economically viable as a business;

(7) that in order to complete the purchase of the property, the partnership would be required to spend an additional

$600,000 and that the failure to provide those funds would entail the forfeiture of the partnership's interest and possible exposure of Cohen to individual liability thereon;

(8) that the same parties, or related entities and individuals, were acting as the seller and buyer of the property; and

(9) that defendant Schwartz, representing all of the parties in the transaction including the seller of the property, the partnership, Cohen, and others, had a conflict of interest.

Defendants prepared plaintiff's federal tax returns for the years 1980, 1981, and 1982. Plaintiff alleges that defendants provided him with false and misleading information regarding the partnership for use in these returns. The IRS audited plaintiff's returns for 1980 and 1981 and determined that the deductions taken on those returns relating to the investment in the partnership were improper and that the values for the property used by defendants in preparation of those returns were overstated. Plaintiff claims that defendants' allegedly fraudulent actions caused plaintiff to suffer a tax liability in excess of $80,000 and also resulted in the partnership being unable to meet its financial obligations. As a consequence, the partnership property was foreclosed, and plaintiff lost all rights to that property.

Defendants contend that: (1) plaintiff's first, second and third causes of action, each of which allege violations of federal or state securities laws, should be dismissed on the ground that no "security" is involved; (2) plaintiff's ninth and tenth causes of action, which allege accounting malpractice and negligence, are barred by the statute of limitations; (3) plaintiff's first, second, third, and fourth causes of action fail to allege fraud with sufficient particularity; (4) plaintiff's state causes of action should be dismissed since plaintiff's federal claims fail; (5) there is no basis in law for the imposition of a constructive trust or attachment of defendants' assets.

## FIRST, SECOND & THIRD CAUSES OF ACTION

■ Defendants' motion to dismiss the first, second, and third causes of action is denied.

A necessary predicate for plaintiff's first three claims is the purchase or sale of a security. Defendants contend that plaintiff's acquisition of a 49% interest in the partnership does not constitute the purchase of a security.

Section 2(1) of the Securities Act, 15 U.S.C. § 77b(1), defines a "security" as follows:

"The term 'security' means any note, stock, bond debenture, evidence of indebtedness, certificate of interest or participation in any profit—sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group of index of securities (including any interest therein or based on the value thereof), or any put, call straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or, in general, any interest or instrument commonly known as a 'security' or any certificate or interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing."

The Securities Exchange Act defines the term "security" in a similar manner, and the courts have viewed the definitions under the two statutes as virtually identical. *See, e.g., Teherepnin v. Knight,* 389 U.S. 332, 335–36, 88 S.Ct. 548, 552–53, 19 L.Ed.2d 564 (1967).

The question presented in this motion is whether plaintiff's interest in the partnership constitutes an "investment contract" within the meaning of these statutes. In *SEC v. W.J. Howey Co.,* 328 U.S. 293, 66

S.Ct. 1100, 90 L.Ed. 1244, *reh. denied,* 329 U.S. 819, 67 S.Ct. 27, 91 L.Ed. 697 (1946), the Court held that a transaction constituted an "investment contract" for purposes of the Securities Act only if there had been "an investment of money in a common enterprise with profits to come solely from the efforts of others." *Id.* at 301, 66 S.Ct. at 1104. There is no dispute that plaintiff made an investment of money in a common enterprise. Defendants contend, however, that plaintiff's purchase of a 49% share of the partnership fails to satisfy the third prong of the Howey test, which requires expectations of profits to come solely from the efforts of others.

Defendants cite a number of cases in which a general partnership interest has been held not to constitute a security under the federal securities laws. *See, e.g., New York Stock Exchange v. Sloan,* 394 F.Supp. 1303 (S.D.N.Y.1975); *Hirsch v. Du-Pont,* 396 F.Supp. 1214 (S.D.N.Y.1975), *aff'd,* 553 F.2d 750 (2d Cir.1977). In *Sloan,* for example, Judge Lasker concluded that general partnership interests in a member firm of the New York Stock Exchange were not "securities," even if the particular general partners in question did not actively participate in the firm's management:

"The record does suggest that at Orvis (as is common practice in partnerships) the day-to-day management of the firm was conducted by a relatively small group of general partners. In our view, however, the determination whether the partnership interest of a general partner is a security does not and should not hinge on the particular degree of responsibility he assumes within the firm. The fact that a partner may choose to delegate his day-to-day managerial responsibilities to a committee does not diminish in the least his legal right to a voice in partnership matters, nor his responsibility under state law for acts of the partnership. *See* N.Y. Partnership Law §§ 10, 11, 26. These factors critically distinguish the status of a general part-

ner from that of the purchaser of an investment contract who in law as well as in fact is a 'passive' investor."

*Id.; see also Hirsch, supra,* 396 at 1222.

Here, however, the general partnership interest in question is apparently quite different from that at issue in the cases cited by defendants. As the Supreme Court in *Teherepnin,* 389 U.S. at 336, 88 S.Ct. at 553, has instructed, "in searching for the meaning and scope of the word 'security' ... form should be disregarded for substance and the emphasis should be economic reality." As the court explained in *Fund of Funds, Ltd. v. Arthur Anderson & Co.,* 545 F.Supp. 1314, 1348 (S.D.N.Y.1982), "if the facts and circumstances indicate that the substance of the investment belies its form, even general partnerships or joint ventures may be subject to the Securities Law." Taking the allegations made in plaintiff's complaint as true, it appears that plaintiff was, in fact, sold a limited partnership interest.[1] Clearly, plaintiff's position in a partnership which he believed he had no legal right to manage is very different from that of the plaintiffs in *Sloan* and *Hirsch.* In those cases, a general partner, who knew he was a general partner, chose to delegate his authority. Here, plaintiff alleges that he did not know he was a general partner because what he was sold was a limited partnership interest. *See, e.g., SEC v. Aqua-Sonic Products,* 687 F.2d 577, 584–85 (2d Cir.), *cert. denied,* 459 U.S. 1086, 103 S.Ct. 568, 74 L.Ed.2d 931 (1982). New York law recognizes that a general partner erroneously believing himself to be limited partner should not be treated as a general partner. *See* 8 Partnership Law § 100 (McKinney's). Given the unique circumstances presented in plaintiff's complaint, in which a partnership that may have had the form of a general partnership appears to have had the economic reality, at least as far as plaintiff and defendants were concerned, of a limited partnership, I conclude that plaintiff's

1. Defendants do not deny that, had plaintiff's interest actually been a limited partnership interest, dismissal of the securities causes of action at this stage of the proceedings would be inappropriate. *See Mayer v. Oil Field Services Corp.,* 721 F.2d 59, 65 (2d Cir.1985).

complaint describes facts that meet the *Howey* test, requiring expectations of profits to come solely from the efforts of others.[2] Accordingly, defendants' motion to dismiss plaintiff's first three causes of action is denied.

### NINTH & TENTH CAUSES OF ACTION

Section 214, CPLR, provides that actions to recover damages for accounting malpractice and negligence are governed by a three-year statute of limitations. Section 203(a) further provides that the time within which an action must be commenced is computed from the time the cause of action accrued to the time the claim is interposed. The defendant accountants contend that the limitations period for plaintiff's ninth and tenth causes of action, which allege malpractice and negligence committed by defendants in connection with the projections and other materials relied upon by plaintiff in purchasing his share in the partnership, began to run in 1980. The com-

plaint in this action was filed on May 31, 1985. Plaintiff, in contrast, contends that the statute is tolled until at least April 1983 by the doctrine of continuous representation.

The doctrine of continuous representation originated in a medical malpractice decision, *Borgia v. City of New York*, 12 N.Y.2d 151, 237 N.Y.S.2d 319, 187 N.E.2d 777 (1962), in which the New York Court of Appeals concluded that "when the course of treatment which includes the wrongful acts or omissions has run continuously and is related to the same original condition or complaint, the 'accrual' comes only at the end of the treatment." *Id.* 237 N.Y.S.2d at 321–22, 187 N.E.2d at 778–79. The Court of Appeals cautioned, however, that "[t]he 'continuous treatment' we mean is treatment for the same or related illness or injuries, continuing after the alleged acts of malpractice, not mere continuity of a general physician-patient relationship. *Id.* The doctrine has been extended to claims

---

**2.** Moreover, this Court is not convinced by defendants' extreme position that a general partnership interest can never be a security for the purposes of the Federal Securities Acts. In *Williamson v. Tucker*, 645 F.2d 404 (5th Cir.1981), *cert. denied*, 545 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981), the court explained that "a scheme which sells investments to inexperienced and unknowledgeable members of the general public cannot escape the reach of the securities laws merely by labeling itself a general partnership or joint venture. *Id.* at 423. *See, e.g., Pawgan v. Silverstein*, 265 F.Supp. 898, 890 (S.D.N.Y.1968), in which the court concluded that a general partnership interest in a real estate syndication constituted a security since "this venture was not a general partnership in the accepted sense." The partnership in *Pawgan* was completely dominated by the managing partners, in whom virtually all managerial and operational authority was vested by the written partnership agreement. In *Williamson*, 645 F.2d at 424, the court explained that:

"an investor who claims his general partnership or joint venture interest in an investment contract has a difficult burden to overcome. On the face of a partnership agreement, the investor retains substantial control over his investment and an ability to protect himself from the managing partner or hired manager. Such an investor must demonstrate that, in spite of the partnership form which the investment took, he was so dependent on the

promoter or on a third party that he was in fact unable to exercise meaningful partnership powers. A general partnership or joint venture interest can be designated a security if the investor can establish, for example, that (1) an agreement among the parties leaves so little power in the hands of the partner or venturer that the arrangement in fact distributes power as would a limited partnership; or (2) the partner or venturer is so inexperienced and unknowledgeable in business affairs that he is incapable of intelligently exercising his partnership or venture powers; or (3) the partner or venturer is so dependent on some unique entrepreneurial or managerial ability of the promoter or manager that he cannot replace the manager of the enterprise or otherwise exercise meaningful partnership or venture powers."

*Id.* (footnotes omitted). In the present case defendants make the disputed allegation that plaintiff is a businessman with sufficient expertise, experience, and knowledge to exercise his partnership powers. In contrast, plaintiff argues that his experience as an architect who owned a company engaged in the manufacture of bus shelters for two years indicates his lack of experience with regard to the business of the partnership (management of a restaurant) and thus his reliance on defendants to manage the business. Clearly, this is a genuine dispute that prevents this Court from granting defendants' motion.

of malpractice by accountants. *See, e.g., In re Investors Funding Corp.,* 523 F.Supp. 533, 547 (S.D.N.Y.1980); *Wilkin v. Dana R. Pickup & Co.,* 74 Misc.2d 1025, 347 N.Y.S.2d 122 (Sup.Ct. Allegheny Co. 1973).

■ Plaintiff's complaint alleges that, acting as plaintiff's accountants in 1980, defendants recommended that plaintiff buy the partnership interest in order to solve a specific tax problem. Defendants allegedly prepared false and misleading projections in order to induce plaintiff to buy the partnership interest. Plaintiff purchased the interest in installments extending to January 2, 1982. Defendants managed the partnership and prepared plaintiff's tax returns for the years 1980, 1981, and 1982. Plaintiff further alleges that defendants continued their misrepresentations to him through at least April 1983. Taking these allegations as true, this Court must reject defendants' contention that their alleged malpractice and negligence was complete when plaintiff bought his partnership interest and was separate from defendants' management of the partnership and their other activities as plaintiff's accountants.

In *Greene v. Greene,* 56 N.Y.2d 86, 451 N.Y.S. 46, 436 N.E.2d 496 (1982), plaintiff sought, *inter alia,* to rescind a trust created and managed by defendants, an individual attorney and his firm, as a solution to plaintiff's investment concerns. The New York Court of Appeals rejected defendants' contention, which was similar to the argument of defendants in the present case that such activity could not constitute "continuous representation:"

"The defendants also urge that there has been no continuous representation in this case because, in their view, the creation of the trust and its management are discrete acts. They contend that if the attorney improperly induced the plaintiff to make the trust, his act was complete at that time. His subsequent acts in administering the trust, also alleged to be wrongful, did not serve as a continuing inducement or as an attempt to correct any impropriety that may have occurred in its creation.

"It appears to be conceded that the defendants performed legal services on plaintiff's behalf by creating the trust and continued to act as her attorney in all legal matters relating to its administration. In addition the plaintiff alleges that this was an integrated plan proposed by the defendants as a solution of her concern over the proper investment of her funds. If these allegations are credited, the defendants' various activities on plaintiff's behalf can be seen as part of a course of continuous representation concerning the same or a related problem."

Similarly, in *In re Investors Funding Corp.,* 523 F.Supp. at 459, a bankruptcy trustee alleged, *inter alia,* that the company's accountants had negligently performed their yearly audits. Since the trustee's action was deemed to have commenced on October 21, 1974, the accountants moved to dismiss all pre-October 21, 1971 claims, contending that they were time-barred. The trustees concluded that all of the audits were related, thus tolling the statute under the continuous representation doctrine. The court ruled that the question of continuous representation raised in that action was a factual one and that, therefore, resolution of the issue on a motion directed to the face of the pleading was premature.

"It has been held that the question of 'continuous treatment' is‧ one primarily for the jury. It is also apparent that the application of this doctrine has been expanded somewhat beyond the scope of its original rationale as expounded in *Borgia, supra. See Modave v. Long Island Jewish Medical Center,* 501 F.2d 1065, 1077 (2d Cir.1974). In any event, the Court concludes that resolution of this issue in the context of a motion purportedly directed at the face of the pleadings would be premature, for the parties in their submission have evidenced that there are disputed factual issues, for example, as to the independence of each annual audit from prior annual audits.

Consequently, the Court declines at this time and on this record to rule as a matter of law on the applicability of the continuous treatment doctrine. If appropriate, the parties may seek to raise the issue at the conclusion of discovery."

*Id.* Plaintiff's complaint raises disputed factual issues as to whether defendants' activities on plaintiff's behalf were part of a course of continuous representation concerning the same or a related problem. Accordingly, the Court declines to rule as a matter of law that the continuous representation doctrine is inapplicable.

## FIRST, SECOND, THIRD & FOURTH CAUSES OF ACTION

Rule 9(b) of the Federal Rules of Civil Procedure is based on a need to provide a defendant with fair notice on the basis of a plaintiff's claim, to protect a defendant's reputation from groundless accusations of fraud, and to prevent strike suits brought for settlement value. *See Ross v. A.H. Robbins Co., Inc.*, 607 F.2d 545 (2d Cir. 1979), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 1140 (1980). On the other hand, Rule 9(b) does not require a plaintiff to recite or plead detailed evidentiary matter, *see Sommerville Major Explorations, Inc.*, 576 F.Supp. 902, 911 (S.D.N.Y.1983), and was not intended to make pleading fraud a throwback to code pleading. As this Court has recently explained:

"To reconcile these conflicting policies, Rule 9(b) has been interpreted in this Circuit to require that a well pleaded claim of fraud include at a minimum the time, place, manner and content of the false misrepresentation, the facts misrepresented, the nature of the alleged reliance, and scienter."

*Kolin v. American Plan*, No. 84–3183 (E.D.N.Y. April 30, 1985) [Available on WESTLAW, DCTU database]. Thus, in *Goldman v. Belden*, 754 F.2d 1059, 1069–70 (2d Cir.1985), the Court of Appeals held in the context of a 10(b) action on a motion to dismiss pursuant to Rule 9(b) that, so long as

" ... a complaint specifies the deceptive statements, the particulars as to how the statements were deceptive, and the time and place at which the statements were made and identifies those persons responsible for the statements, it meets the pleading requirements of Rule 9(b). *Goldman* also reaffirmed the proposition that allegations of knowledge and scienter may be pleaded generally, *id.*, and that a complaint should not be dismissed unless 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' *Id.*"

*Id.* (citations omitted).

■ Plaintiff's complaint clearly sets forth the fraud claims in sufficient detail to prevent this Court from concluding that plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Accordingly, this Court cannot dismiss the complaint. In this situation, as stated in Wright & Miller, *Federal Practice* § 68 at 448 (1983):

"If the allegations of fraud are not sufficiently particularized, the remedy is not to dismiss the complaint, but to require a more definite statement or to permit defendants to ascertain the facts by discovery."

## STATE LAW CLAIMS

■ Since, as discussed above, this Court has federal question jurisdiction over this action, the state law claims are properly before this Court pursuant to the principles of pendent jurisdiction. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

## REMEDIES

■ Plaintiff's request in his demand for relief for judgment "attaching the remaining assets of the defendants in satisfaction of a potential judgment on the grounds that a fraud has been committed" must be stricken. Under Rule 64, an attachment is "available under the circumstances and in the manner provided by the law of the state in which the district court is held." In New York, an attachment is a provisional remedy. 7A Weinstein-Korn—Miller,

*New York Civil Practice* ¶ 6201.02 at 62–8 (1984). To obtain an order of attachment, a plaintiff must either make a motion on notice, CPLR § 6210, or obtain an ex parte order and move, on notice, for confirmation within five days, CPLR § 6211(a), (b). Plaintiff has done neither. This Court knows of no authority granting an attachment as part of a judgment (as opposed to on motion) in an action such as this one. Thus, defendants' motion to strike this request is granted.

 Plaintiff request in his demand for relief for judgment "imposing a constructive trust on the remaining assets of the defendants and prohibiting them from disposing of such assets pending the outcome of this action," must also be stricken. A constructive trust is an equitable remedy that is employed

> " ... when a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it."

*Cherno v. Dutch American Merchantile Corp.*, 353 F.2d 147, 153 (2d Cir.1965). Here, plaintiff has not alleged that defendants have, in any way, been unjustly enriched or that any property was transferred to defendants. The basis of plaintiff's claim appears to be that the partnership failed to make payments on a mortgage and that partnership property was foreclosed upon by unknown third parties. Plaintiff does not claim that defendants have the partnership property. Moreover, plaintiff's complaint provides no justification for the imposition of a constructive trust. As Judge Tenney explained in *Gilbert v. Meyer*, 362 F.Supp. 168 (S.D.N.Y.1973), in granting a summary judgment motion:

> "a constructive trust is a fiction imposed as an equitable device for achieving justice. This court ... need not resort to a 'legal fiction' to afford plaintiff relief upon the facts alleged in the complaint.... [T]his court, acting upon a violation of 10(b) and Rule 10b–5, can directly award to plaintiff money damages, enter a judgment to that effect and

enforce execution of that judgment without the need for equity's intervention. Indeed, in all instances in the complaint where plaintiff has requested the imposition of a constructive trust this Court can afford plaintiff full relief by awarding money damages."

*Id.* at 173. Therefore, defendants' motion to strike this request is granted.

Defendants' motion to dismiss the first, second, third, fourth, ninth, tenth, and eleventh causes of action are denied. Defendants' motion to strike plaintiff's requests for attachment and constructive trust is granted.

The Clerk is directed to mail a copy of the within to all parties.

SO ORDERED.