OPINION OF THE COURT
Kristin Booth Glen, J.
Beginning in the late 1960’s, the United States Supreme Court “significantly widened” the circle of interests “sufficient to create ‘liberty’ or ‘property’ for purposes of due process”[1] (Tribe, American Constitutional Law, § 10-9, p 514). As that circle of interests expanded to include the temporary deprivation of property, or property in which individuals lacked full title (id., p 521), State provisional remedy statutes were subjected to rigorous constitutional scrutiny and were often found wanting.[2] One provisional *815 remedy — lis pendens, or notice of pendency — has, somewhat surprisingly widely escaped such scrutiny both nationally,[3] and in this State. This motion, however, requires consideration of the New York notice of pendency statute (CPLR 6501 et seq.) and a finding that the statute must constitutionally be read to grant authority to consider the underlying merits of an action where an aggrieved property owner moves to cancel a lis pendens.
FACTS
Defendant Christine Harris moves pursuant to CPLR 6514 (subd [b]) or alternatively CPLR 6515, to cancel the notice of pendency plaintiff filed against a building owned by Ms. Harris. Plaintiff Hercules Chemical Co. Inc. (Hercules) opposes the motion- to cancel and cross-move for leave to conduct discovery regarding the circumstances surrounding Ms. Harris’ acquisition of the subject building.
The underlying controversy in this case arises out of a contract entered into between the parties to renovate plaintiff’s building located on West 38th Street. Under the terms of their agreement, plaintiff Hercules hired defendant VCI, Inc. (VCI) as a general contractor to reconstruct the interior of plaintiff’s building in exchange for which Hercules was to pay VCI $100,052.92 in designated installments.
In its complaint plaintiff alleges the following series of events: After paying VCI a total of $80,000, Hercules claims that VCI began to default on payments it owed to various subcontractors. Shortly thereafter, VCI asked plaintiff to pay the debts owed to the subcontractors and *816 threatened to halt the renovation work unless plaintiff made the requested payments. Apparently no such payments were made and the work stopped. Later, several unpaid subcontractors with claims amounting to a total of $60,000 threatened to file mechanic’s liens against the premises. In its amended complaint, plaintiff alleges that two such liens were actually filed against the premises, forcing plaintiff to post bonds to have the liens removed.
Plaintiff commenced this action in July of 1982 against VCI and two named individual defendants, Stanley Harris, the president and sole shareholder in VCI, and Christine Harris, his wife. In its complaint Hercules asserts four causes of action.[4] Only the third is relevant to the issue before this court. The third cause of action, which is asserted against Stanley and Christine Harris as the sole owners and officers of VCI, seeks to impose a constructive trust upon a different building recently purchased by Ms. Harris. In support of this claim, plaintiff alleges that Stanley and Christine Harris diverted funds from VCI for Ms. Harris to purchase a building located at 239 East 18th Street, intending to leave VCI insolvent.
THE NOTICE OF PENDENCY
On the same day that Hercules filed the complaint, it also filed a notice of pendency against the building purchased by Ms. Harris. Shortly thereafter Ms. Harris moved to cancel the notice of pendency. In her affidavit in support of her motion, Ms. Harris asserts that she is not now and has never been a director, officer, shareholder or employee of VCI, Inc. Ms. Harris further denies that she received any money from VCI or her husband, Stanley Harris, to purchase the subject building. In her affidavit, Ms. Harris explains that she purchased the building in May of 1982 for a total of $10 in cash, taking title subject to the *817 outstanding mortgages on the building (one in the amount of $83,559 and the other $131,941). Ms. Harris argues that the small amount of cash she paid for the building undermines plaintiff’s claim of diversion of “trust funds”. Assuming the court found such a diversion of corporate funds, the total amount involved would be $10, a de minimis amount which Ms. Harris claims fails to justify filing a notice of pendency.
Ms. Harris contends that she will suffer irreparable harm unless the court cancels the existing notice of pendency. In her affidavit, Ms. Harris states that she entered into a contract of sale to sell the subject building before she learned that plaintiff filed a lis pendens against the property. Ms. Harris claims that she will be forced to breach the contract of sale if the lis pendens remains in effect, since she cannot convey an unencumbered title to the purchaser. Accordingly, Ms. Harris demands the cancellation of the notice of pendency pursuant to CPLR 6514 (subd [b]), or alternatively pursuant to CPLR 6515, seeks to cancel the notice by posting an undertaking in the amount of $10.
In opposition to the motion to cancel, plaintiff contends that cancellation of the lis pendens would seriously jeopardize its chances of satisfying any judgment it might obtain in this action. To establish the need for the continuation of the lis pendens and the validity of its constructive trust claim, plaintiff requests leave to depose Mr. and Mrs. Harris as well as Mr. Colletti, the building’s former owner, regarding the circumstances surrounding its sale.
THE STATUTE
CPLR 6501 authorizes the filing of a notice of lis pendens in any action brought to recover a judgment affecting “the title to, or the possession, use or enjoyment of, real property.” The purpose of filing a lis pendens is to put all potential buyers on notice that the ownership of the property is the subject of a pending lawsuit. Any person who purchases the property after the notice is filed is bound by the proceedings. Thus, much like a lien or other security attachment, the filing of a lis pendens serves to freeze the status quo, enabling the court to render a meaningful judgment at the close of the lawsuit. However, unlike *818 similar provisional remedies, a notice of pendency is filed in a relatively pro forma manner.
Under CPLR 6511 (subd [b]) a party to an action affecting real property may file a lis pendens against the subject property by stating only the names of the parties to the action, the object of the action, and by providing a description of the property affected. Thus, the filing of a lis pendens requires no judicial action, no showing of probable cause and no prior notice to the property owner. Nor is the party who files the lis pendens required to post a bond to protect the owner against possible damages resulting from an unsupportable claim.
For the property owner the consequences of filing of the notice are serious. By registering a conflicting claim against the owner’s title, the filing of a notice of pendency severely restricts, if not undermines, the owner’s power of conveyance since the owner can no longer convey an unencumbered title.
Under the existing statutory scheme, there are two avenues for an aggrieved owner to obtain a discretionary cancellation of the notice.[5] 12345 One such provision, CPLR 6514 (subd [b]) allows the court to cancel a notice of pendency upon finding that the plaintiff has not commenced or prosecuted the action in good faith. The other, CPLR 6515 gives the court the power to cancel a notice of pendency if the owner furnishes a sufficient undertaking to secure plaintiff’s interest in the property.[6]
In addition to these express statutory provisions, under CPLR 6501 the court has the implicit power to cancel a notice of pendency upon finding that the complaint fails to *819 state a cause of action affecting real property. (Mills v Bliss, 55 NY 139.) “No express authority is given to cancel the notice because the action is not one in which it may properly be filed. But we shall assume such power is vested in the courts.” (Schomacker v Michaels, 189 NY 61, 64.) In a long line of cases, beginning with Mills v Bliss (supra) the courts have taken the position that determination of whether the action is one affecting real property must be made without consideration of the merits of the plaintiff’s claim. (Interboro Operating Corp. v Commonwealth Security & Mtge. Corp., 269 NY 56; Lindheim & Co. v Central Nat. Realty & Constr. Co., 111 App Div 275; St. Regis Paper Co. v Santa Clara Lbr. Co., 62 App Div 538; Mageloff v Sarkin, 52 Misc 2d 737; Deitch v Atlas, 132 NYS2d 806; Richards v Chuba, 195 Misc 732.) Under the general rule emerging from these cases, the court must assume the truth of the allegations contained in the plaintiff’s complaint when deciding whether the action is one affecting real property.
At the time this rule was adopted, before the turn of the century, the primary concern guiding the court’s interpretation of the notice of pendency statute was to provide a means to preserve the subject matter of the litigation, protecting plaintiffs as well as any potential purchasers of the subject property. More recently, courts have begun to consider the legitimate interests of the defendant whose property is affected. During the past two decades many Federal and State courts have held similar provisional remedies to be unconstitutional for their failure to provide basic due process safeguards to protect against an unreasonable taking of the defendant’s property (Tribe, American Constitutional Law, § 10-9). It is with these concerns in mind that the notice of pendency statutes must be assessed.
CONSTITUTIONAL ISSUES
The Fourteenth Amendment provides that no State shall deprive any person of property without due process of law. In a series of cases dealing with various provisional remedies, the United States Supreme Court has elucidated a broad concept of what constitutes an unconstitutional taking of property under the Fourteenth Amendment.
*820 In the first of these decisions, Sniadach v Family Fin. Corp. (395 US 337), the Supreme Court held unconstitutional a Wisconsin garnishment statute allowing 50% of a debtor’s wage to be frozen by mere service of process, without notice and a prior hearing. In Fuentes v Sheuin (407 US 67) the Supreme Court struck down Florida and Pennsylvania replevin statutes that allowed seizure by a Sheriff of goods sold without notice of a hearing or prior judicial authority. In reaching its decision in Fuentes, the court explained (p 86): “[tjhe Fourteenth Amendment’s protection of ‘property’ * * * has never been interpreted to safeguard only the rights of undisputed ownership. Rather it has been read broadly to extend protection to ‘any significant property interest’ ”.
In the next case, Mitchell v W. T. Grant Co. (416 US 600), the court upheld a Louisiana statute that allowed for an ex parte prejudgment seizure of property subject to a vendor’s lien on the grounds that, unlike the Florida and Pennsylvania laws, the statute required court approval, a demonstration of the basis for the seizure, the posting of a bond, and provided for an immediate postseizure hearing.
The court further clarified what is necessary to provide due process in North Georgia Finishing v Di-Chem, Inc. (419 US 601). There, the court concluded that a prejudgment garnishment statute which demanded an affidavit with only conclusory allegations, made by someone without personal knowledge, did not provide sufficient due process.
The essential holding of these cases is that a State may not authorize the taking of “any significant property interest” without giving the owner prior notice and a hearing, unless the State provides other statutory safeguards sufficient to protect the owner against a mistaken deprivation of his property. Thus, the Supreme Court has simultaneously expanded the definition of what constitutes “property” under the Fourteenth Amendment and adjusted its concept of the due process procedures required. Where there is only a partial or temporary deprivation of property, the necessity of prior notice and a hearing may be obviated by a postattachment judicial proceeding in which the Judge may examine the underlying merits of the case.
*821 STATE CONSTITUTIONAL ISSUES
The New York Court of Appeals has addressed the constitutionality of provisional remedies in the context of our own State Constitution, and in so doing has found violations where there was not the requisite State action to violate the Fourteenth Amendment. In Sharrock v Dell Buick-Cadillac (45 NY2d 152),[7] the court found that New York’s garageman’s lien statute violated the State Constitution even though the Supreme Court had recently upheld a similar statute on the basis that there was no State action. (Flagg Bros. v Brooks, 436 US 149.)[8]
In contrast to the language of the Fourteenth Amendment, section 6 of article I of the New York State Constitution guarantees that “No person shall be deprived of life, liberty or property without due process of law”. Conspicuously absent is any requirement of State action. In Sharrock (supra, p 160), the Court of Appeals explained: “That is not to say, of course, that the due process clause of the State Constitution eliminates the necessity of any State involvement in the objected to activity (see Stuart v Palmer, 74 NY 183, 188). Rather the absence of any express State action language simply provides a basis to apply a more flexible State involvement requirement than is currently being imposed by the Supreme Court with respect to the Federal provision.” Thus, even were the fact that the notice of pendency is filed with the clerk and enforced by the courts of this State not enough to guarantee Fourteenth Amendment protection, it certainly is sufficient to invoke protection of due process rights under the more flexible standard of the State Constitution.
In the other major New York case addressing the constitutionality of this kind of a provisional remedy, New York’s mechanic’s lien statute was upheld (Morse v Rentar Ind. Dev. Corp., 56 AD2d 30 affd on opn below 43 NY2d *822 952). The Appellate Division first considered the nature of the property interest at stake. It pointed out that, unlike the provisional remedies struck down by the United States Supreme Court, the filing of a mechanic’s lien does not deprive the owner of either the use or the possession of his property. Although the court acknowledged that the lien does interfere with the owner’s ability to sell the property, by imposing “a ‘cloud’ on the owner’s title, rendering alienation ‘more difficult’, or perhaps ‘less profitable’” (supra, p 35), it nevertheless concluded that this infringement did not amount to the deprivation of a “significant property interest”. This is so because for the property owner, the economic effect of the filing of a mechanic’s lien amounts to “a wash”, i.e., the lien diminishes the value of the property in an amount equal to the value of the improvements made.
Based on this assessment of the property interest involved, the court found the mechanic’s lien statute provided sufficient due process safeguards. The procedural safeguards approved by the court in Morse (supra) are instructive for the reason that each of these protections is missing from the notice of pendency statute.
The first relevant procedure concerns the statute’s filing requirements. Instead of the conclusory assertions which suffice for filing of a notice of pendency, the mechanic’s lien statute requires the lienor to submit a statement under oath of the specific facts supporting his claim. (Lien Law, § 9.) The statutes’ postfiling procedures also differ. After a mechanic’s lien is filed, the property owner can compel an expeditious hearing on the merits of the lienor’s claim. (Lien Law, § 59.) Unless such an action is commenced or the lienor moves to foreclose the lien on the merits, the mechanic’s lien expires after one year (Lien Law, § 17). The notice of pendency statute contains no such provision for a postfiling hearing on the merits, and remains in force for three years.[9]
As already discussed, the owner aggrieved by the filing of a lis pendens may only move to cancel the notice by *823 posting an undertaking[10] or demonstrating that the action was not prosecuted in good faith. Furthermore, if the property owner challenges the validity of the action as one not properly affecting the subject property, under existing case law the court is prohibited from considering the merits of the case. Consequently, under the notice of pendency statute the aggrieved property owner is utterly deprived of an opportunity, either before or after the notice is filed, for a hearing on the merits.
DISCUSSION
The Supreme Court has explicitly recognized that, “among the civil rights intended to be protected * * * by the Fourteenth Amendment are the rights to acquire, enjoy, own and dispose of property.” (Shelley v Kraemer, 334 US 1, 10; emphasis added.) As the facts in this case demonstrate the filing of a notice of pendency clearly interferes with the owner’s ability to sell the subject property. While this imposition may not amount to the taking of a “significant property interest”, I am convinced that the interference is sufficient to trigger the constitutional requirements of due process.
Other courts have reached the same conclusion. Examining the constitutionality of New Jersey’s lis pendens statute, the United States Court of Appeals in Chrysler Corp. v Fedders Corp. (670 F2d 1316, 1324-1325, supra), found “that the degree of deprivation caused by a filing of a notice of lis pendens warrants reaching the due process issue.” In reaching this conclusion the court distinguished those cases which have held that a mechanic’s lien does not result in the taking of a “significant property interest”.
Comparing a notice of pendency and a mechanic’s lien the court stated: “there is a significant distinction between the situation in which a mechanic’s lien is filed and that where a lis pendens is filed. It may be possible to view the *824 restriction on alienability caused by a mechanic’s lien...as one consented to by the debtor. Certainly it may be viewed as one bargained for between the parties. The labor or materials which are the subject of the lien have presumably enhanced the value of the property. In return, the property owner was aware that nonpayment would subject it to a mechanic’s lien, but also that any claim must be filed and suit begun within a limited period of time after the provision of the work or materials. Thus different equities and considerations inhere in the mechanic’s lien situation.” (See Comment, Does California’s Statutory Lis Pen-dens Violate Procedural Due Process?, 6 Pac LJ 62, 67.) A notice of pendency attaches a conflicting claim to a property owner’s title, diminishing the owner’s power of conveyance. Several State and Federal courts have recognized the severity of the consequences resulting from a similar encumbrance upon a property owner’s title (see, e.g., Barry 353, 222, 228 [1976, mechanic’s lien]; Terranova v Avco Fin. Servs. of Barre, 396 F Supp 1402, 1406 [attachment of real property]; Clement v Four North State St. Corp., 360 F Supp 933, 935 [attachment of real property]). At least one other State court, the Supreme Court of Connecticut, has held that the filing of a lis pendens is a sufficient interference with property and the defendant to require the protection of the Fourteenth Amendment. (Kukanskis v Griffith, 180 Conn 501.)
Having found that due process is required, the question remains, what process is due? Clearly, the greater the taking, or interference with significant rights, the more procedural protections must be accorded. Conversely, as in Mitchell v W. T. Grant Co. (416 US 600, supra), a more limited taking requires fewer procedural safeguards.[11] The applicable test is found in Matthews v Eldridge (424 US 319, 335) where the court wrote: “[identification of the *825 specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.”
Here, the “private interest” in conveyance of real property, discussed supra, is encumbered,[12] for up to three years, by virtue of the nonjudicially supervised filing of a notice based on an entirely conclusory claim that the filing of plaintiff’s action is one “affecting” the owner’s subject property. The risk of an erroneous deprivation is substantial; clearly, a large number of plaintiffs who have filed Us pendens do not ultimately prevail on their underlying actions; further, the ability to encumber property for substantial periods of time without judicial scrutiny creates the potential for unscrupulous plaintiffs with spurious claims to “hold up” owners, or to force settlements because their unfounded claims remain unexamined. It is the ability to examine those claims, to see if they truly do “affect the subject premises” which is critical,[13] and which is presently missing from the statutory scheme.[14] Any plaintiff can add a cause of action seeking to impose a constructive trust on real property whether or not there are facts which would even minimally substantiate such a claim. *826 While the owner may ultimately prevail, he will be injured unless a prompt determination of the bona fides of the claims occurs.
Here, the additional cost to the State, if any, is small. A Judge already confronted with a motion such as the instant one will not be greatly overburdened by making such additional determination in the appropriate case. A hearing will rarely, if ever, be required, and affidavits should generally suffice to determine whether there is any cognizable claim. Further, many cases so clearly involve the property or are brought against defendants who have no plans to convey the property (see n 12) that no additional scrutiny will be required. But where, as here, a substantial question is raised by a defendant intent on selling, as to whether the property which is the subject of the lis pendens is also, truly, the subject of the plaintiff’s action, the court should, and constitutionally must, determine that claim.
CONCLUSION
In its complaint, plaintiff seeks to impose a constructive trust upon Harris’ property, but provides no allegations regarding how the corporate funds were diverted to enable Ms. Harris to purchase the subject property. Ms. Harris has come forward with substantial evidence indicating that no such diversion of funds took place. In its cross motion, plaintiff acknowledges the court’s authority to consider the merits of its claim, and requests leave to conduct further discovery to adequately respond to the allegations Ms. Harris has raised.
In view of the disputed facts in this case regarding the viability of plaintiff’s constructive trust claim, and what I perceive as this court’s constitutional obligation to provide the defendant with an opportunity for a review of the notice of pendency on the merits, plaintiff’s cross motion for leave to conduct discovery is granted. The discovery shall be completed within 30 days after this decision is filed with notice of entry. Upon completion of the discovery, defendant may renew her motion to cancel the notice of pendency which shall be considered on the merits.

. These included such “interests” as welfare benefits, e.g. (Goldberg v Kelly, 397 US 254), a driver’s license (Bell v Burson, 402 US 535), continued employment at a State university (Perry v Sindermann, 408 US 593), and conditional freedom following parole (Morrissey v Brewer, 408 US 471).

. For example, New York’s attachment statute was challenged in Sugar v Curtis Circulation Co. (383 F Supp 643, remanded sub nom. Carey v Sugar, 425 US 73) resulting in the enactment of CPLR 6211 (subd [b]) in 1977 “to comply with the claims that the existing attachment procedure unconstitutionally deprived debtor defendants of *815 a prompt hearing after an ex parte attachment.” (Eisenberg v Citation-Langley Corp., 92 AD2d 795.)

. Only five reported cases decided after Mitchell v W. T. Grant Co. (416 US 600) have been found. One, Kukanskis v Griffith (180 Conn 501), held the State lis pendens statute unconstitutional. The most recent, Chrysler Corp. v Fedders Corp. (670 F2d 1316) held that there is sufficient taking so that due process applies, but found the protections in the New Jersey statute constitutionally adequate (accord Debral Realty v DiChiara, 420 NE2d 343,348 [Mass]). Two cases hold that there is no constitutional requirement of a hearing prior to filing the lis pendens (George v Oakhurst Realty, 414 A2d 471 [RI]; Batey v Digirolamo, 418 F Supp 695; see, generally, comment, Does California’s Statutory Lis Pendens Violate Procedural Due Process?, 6 Pac LJ 62, 63).

. The first cause of action claims that VCI misappropriated and directed moneys it received from plaintiff in violation of article 3-A of the Lien Law (requiring that moneys received by a general contractor be held in trust for payment to each subcontractor). In an attempt to pierce the corporate veil, the second cause of action realleges the first against Stanley and Christine Harris as the sole owners and officers of VCI with complete control and domination of the corporation. The fourth cause of action alleges a claim of fraud against the two named defendants.

. In addition to the provisions granting the court the discretionary power to cancel a notice of pendency, CPLR 6514 (subd [a]) mandates the cancellation of a notice of pendency if:
1) service of the summons has not been made within thirty (30) days after the notice was filed,
2) the action has been settled, discontinued or abated,
3) plaintiff loses on the merits and his or her time to appeal expired, or
4) plaintiff loses on the merits and enforcement of the judgment has not been stayed.

. Under CPLR 6515 (subd 2) the court may also compel the plaintiff to post an undertaking to indemnify the defendant for damages he or she may incur if the notice is not canceled.

. New York’s garageman’s lien statute (Lien Law, § 184 et seq.) allowed appropriation and sale of a vehicle in settlement of an allegedly outstanding bill without any judicial supervision.

. Although the Supreme Court found the statute in Flagg Bros. v Brooks (436 US 149) constitutional it did so solely on the basis that there was no State action. The court’s exegesis of the constitutional requirements for procedural due process as developed in Fuentes v Shevin (407 US 67) is still binding.

. The three-year period may be extended by the court upon good cause shown under CPLR 6513, presumably because court backlogs may delay resolution of the underlying claim for more than three years.

. In Sniadach v Family Fin. Corp. (395 US 337, supra), the court held that a recovery provision allowing the defendant to post security so as to regain the property was insufficient to protect her/his constitutional interest. In North Georgia Finishing v Di-Chem, Inc. (419 US 601, 608, supra), even a double bond posted by the plaintiff!creditor was inadequate to assure the debtor defendant that she/he would “be made whole in the event the garnishment turns out to be unjustified.”

. In the context of creditors’ remedies, the court has characterized the necessary inquiry as whether the statute effected “a constitutional accommodation of the conflicting interests of the parties” (Mitchell v W. T. Grant Co., supra, p 607). The Mitchell statute granted the creditor substantially greater protection against an unfair or baseless taking than does CPLR 6501 et seq. including “an immediate [postseizure] hearing and dissolution of the writ ‘unless the plaintiff proves the ground upon which the writ was issued’ ” (supra, p 618).

. Of course, where the property owner does not wish to alienate or mortgage her/his property, there is no cognizable taking, and due process guarantees do not come into play. (Cf. Chrysler Corp. v Fedders Corp., supra, p 1328.)

. Significantly, in upholding New Jersey’s statutory scheme, the Third Circuit noted that it provides for discharge of a notice of lis pendens if the plaintiff fails to prosecute the action diligently or “for *** good cause shown” (NJ Stats Ann., §2A:15-10). New Jersey courts thus permit a motion to discharge the lis pendens “when the complaint shows that the action is not one which supports a lis pendens in that the necessary relationship between the claim and the property is absent” (Chrysler Corp. v Fedders Corp., supra, p 1330).

. Construing the lis pendens statute, one court however, held that upon a motion to bond the lis pendens under section 124 of the Civil Practice Act (now CPLR 6515) the court may consider the merits, the good faith of the plaintiff and the possibility of his being successful in the facts which are presented to the court. (Deitch v Atlas, 132 NYS2d 806.)