OPINION OF THE COURT
Nicholas A. Clemente, J.
By a contract dated November 15, 1983, Eleanor B. Yaffe and Helen M. Blumberg agreed to sell 8805 18th Avenue in Brooklyn, New York, to Jack Weksler (who owned an adjoining building) and Norman Green. The purchase price was $150,000 which was in part to be paid by the giving of a purchase-money mortgage in the amount of $60,000.
*634 A handwritten rider to the contract provided that:
"B. Purchaser will take subject only to the violations dated October 31, 1983 and to sidewalk violations, if any. Seller shall be responsible for any violations issued prior to the date of this contract provided that if the cost to cure same exceeds $1,000.00, seller shall have the right to cancel this contract and return the deposit paid hereunder, provided however that the purchaser shall have right to accept the premises with such violation if any and receive an abatement of $1,000.00 towards the purchase price [sic].
"C. If this contract is cancelled at sellers default or sellers election the deposit paid hereunder shall be returned to purchaser together with reasonable cost not to exceed $4,000 to repair the sidewalk, if same has been repaved by purchaser [sic]”
By letter dated February 23, 1984, the agent for Blumberg and Yaffe wrote to Weksler and Green that pursuant to paragraph C of the rider they were canceling the contract and returning the down payment.
Weksler and Green, plaintiffs herein, then commenced this action, inter alia, against defendants Yaffe and Blumberg by summons and complaint dated March 13, 1984 seeking specific performance of the contract dated November 15, 1983 and damages.
Damages are sought for (1) $4,000 because of a sidewalk repair made by plaintiffs; (2) $150,000 because plaintiffs had agreed to assign the contract of November 15, 1983 for $300,-000 resulting in a profit of $150,000 but they were forced to default on the assignment because of defendants’ failure to convey title; and (3) $30,000 which was to be paid to a broker for arranging the assignment. Plaintiffs also placed a lis pendens on the property at 8805 18th Avenue.
Defendants now move for an order vacating the lis pendens so that they may sell the . subject premises with the proviso that they deposit the proceeds of the sale in a special fund to answer for damages to the plaintiffs, if any.
Defendants’ attorney in an affirmation in support of the motion apparently contends that there has been some breach of the contract by plaintiffs because Weksler stated he was buying the property for himself and would personally give the mortgage but that in actuality Weksler and his copurchaser assigned the contract. Defendants also seem to assert that *635 they have a right to cancel the contract under paragraph C of the rider set forth supra.
Defendants seek to further buttress their claim for relief with an allegation that plaintiffs’ attorney indicated that plaintiffs are not interested in obtaining the building but seek instead money damages. Finally, defendants point to the hardship of maintaining the subject building which is vacant and their inability to dispose of the building because of the lis pendens.
Plaintiffs in opposing the motion initially point out that there is no basis whether statutory or precedential for the relief sought by defendants. Plaintiffs concede that they had assigned the contract for $300,000 and assert that this was the very reason for defendants’ breach, namely, their inability to suffer the profit plaintiffs were making on the deal. Plaintiffs do not agree, however, that they seek only money damages but maintain that they seek both $150,000 in damages representing lost profit and specific performance of the contract.
An examination of the law relating to lis pendens removal indicates that this matter is one involving the statutory interpretation and application of CPLR 6514 (b) and 6515.
CPLR 6514 (b) provides the following: "(b) Discretionary cancellation. The court, upon motion of any person aggrieved and upon such notice as it may require, may direct any county clerk to cancel a notice of pendency, if the plaintiff has not commenced or prosecuted the action in good faith.”
As to this provision, the operative issue is the "good faith” of the plaintiffs. Where the action is not being diligently prosecuted or the action has been commenced in order to procure a notice of pendency for some ulterior purpose, the court should exercise its discretion and remove the notice of pendency (7A Weinstein-Korn-Miller, NY Civ Prac ¶ 6514.10). In seeking to vacate a lis pendens based on a claimed lack of good faith, however, the burden is upon defendants to show that plaintiffs lacked good faith in their commencement or prosecution of the action (Barnett v Barnett, 79 AD2d 762, 764). Nor is the burden easily met (cf. Jonestown Place Corp. v 153 W. 33rd St. Corp., 74 AD2d 525, 526) since it has been held that the presence of "any cognizable claim” is sufficient to establish good faith and there must be at least a substantial question to show the absence of good faith (see, Hercules Chem. Co. v VCI, Inc., 118 Misc 2d 814, 826).
Applying these principles to the instant matter, it be *636 comes readily apparent that defendants have failed to show plaintiffs’ lack of good faith. More significantly, defendants have failed to come forward with any valid excuse for their default on the November 15, 1983 contract of sale. A perusal of paragraphs B and C of the rider shows that there is a serious question as to defendants’ right to cancel under the circumstances herein.
Since CPLR 6514 (b) cannot be a basis for relief for defendants the issue then becomes whether CPLR 6515 provides a means to remove the lis pendens.
CPLR 6515 states:
"In any action other than one to foreclose a mortgage or for partition or dower, the court, upon motion of any person aggrieved and upon such notice as it may require, may direct any county clerk to cancel a notice of pendency, upon such terms as are just, whether or not the judgment demanded would affect specific real property, if the moving party shall give an undertaking in an amount to be fixed by the court, and if:
"1. the court finds that adequate relief can be secured to the plaintiff by the giving of such an undertaking; or
"2. in such action, the plaintiff fails to give an undertaking, in an amount to be fixed by the court, that the plaintiff will indemnify the moving party for the damages that he may incur if the notice is not cancelled.”
The initial question concerns the meaning of CPLR 6515.
The process embodied in CPLR 6515 for lis pendens removal is set forth in Rosenhaus v 305 W 97th (8 Misc 2d 433) which explanation was quoted in Weinstein-Korn-Miller (vol 7A, NY Civ Prac ¶ 6515.05). The court in Rosenhaus explained the CPLR 6515 procedure (p 434) as follows: "The person filing the lis pendens may continue its effectiveness by making a deposit or giving an undertaking which the court may in its discretion require. That undertaking or deposit is the security which the property owner has in the event of the ultimate failure of the proceeding by the person so filing. If the one filing the notice of pendency shall fail to make the said deposit or furnish the necessary undertaking, then the applicant for cancellation of the pendency notice may effectuate such relief by making a deposit or furnishing an undertaking as the court shall require.”
Prior to 1957, if the action was one for specific performance an undertaking was not considered sufficient to justify re *637 moval of the lis pendens since conveyance of a particular, and presumably unique, piece of property was sought (Steel-Crete Homes Co. v Roseth Realty Co., 228 App Div 723; Ronga v Alpern, 45 Misc 2d 1029). As CPLR 6515 and its antecedent have evolved, however, undertakings have furnished the basis for removal of notices of pendency even when the action is one for specific performance of a contract to purchase real property (Kipp v Hill Rd. Home Corp., 9 Misc 2d 51). The uniqueness of the property still remains as an important factor in determining whether to permit lifting of the lis pendens. To be also considered are the circumstances surrounding the action, the probability of success and the question of good faith (Ronga v Alpern, supra, p 1031). All of these matters relate to the adequacy of protection given to a plaintiff within the requirements of CPLR 6515 (1).
In my view, the facts indicate that plaintiffs have minimal interest in defendants’ building except for purposes of a profitable resale. This is unquestionably established by the fact that plaintiffs assigned their contract of purchase. Hence, I conclude that removal of the lis pendens should be permitted provided that plaintiffs are adequately secured. Of course, under CPLR 6515 (2) if plaintiffs are interested in maintaining the lis pendens, they themselves may post an undertaking to indemnify defendants from loss from noncancellation. Before reaching that issue, however, further consideration is necessary of the undertaking to be required of defendants.
The undertaking under CPLR 6515 is a substitute for the property (Dair Bldg. Constr. Co. v Mayer, 31 AD2d 835). The word undertaking is defined in CPLR 2501 as:
"Undertaking includes
"1. Any obligation, whether or not the principal is a party thereto, which contains a covenant by a surety to pay the required amount, as specified therein, if any required condition, as specified therein or as provided in subdivision (c) section 2502, is not fulfilled; and
"2. any deposit, made subject to the required condition, of the required amount in legal tender of the United States or in face value of unregistered bonds of the United States or of the state.”
At bar defendants propose an ambiguous offer of being permitted to sell the subject premises with the receipts of sale going to secure plaintiffs’ rights. Clearly, that is not an undertaking within the meaning of CPLR 2501.
*638 Examination of the pleadings disclose that plaintiffs claim approximately $180,000 as damages for lost profits and brokerage commissions. An undertaking in this amount is further warranted by the weakness of defendants’ case as presented in this motion. Thus, to adequately secure plaintiffs, such undertaking must be posted. The undertaking must also take the form required by CPLR 2501.
As previously indicated, plaintiffs may maintain the lis pendens if they post an undertaking to secure defendants from any loss caused by not canceling the lis pendens. Defendants claim, without contradiction, that maintaining the building which they are forced to keep because of the lis pendens, is costing them $13,000 a year. Plaintiffs, on the other hand, contend trial of this matter should occur shortly. Hence, it appears that if plaintiffs wish to maintain the lis pendens, they should post an undertaking for $13,000. Thus, if plaintiffs’ interest is really the building, they will have a means of maintaining their interest in it.
In sum, if plaintiffs desire to maintain the lis pendens, they must within 10 days of service of a copy of an order to be settled hereon, give an undertaking in the amount of $13,000 to indemnify defendants for any damages they may incur from noncancellation. In the event that plaintiffs fail to post such an undertaking, then the lis pendens shall be canceled upon the posting by defendants of an undertaking in the amount of $180,000.