**UNITED STATES of America and National Credit Union Administration, Plaintiffs,**

v.

**Bartholomew RIVIECCIO, et al., Defendants.**

**CHEMICAL BANK, Plaintiff,**

v.

**434 12TH STREET CORP., et al., Defendants.**

**MARAL FUNDING CORP., et al., Plaintiffs,**

v.

**CORAL REALTY CORP., et al., Defendants.**

Nos. CV–86–1441, CV–86–1702 and CV–86–2715.

United States District Court, E.D. New York.

May 13, 1987.

Anne E. Stanley, Jeffrey A. Coryell, Asst. U.S. Attys., E.D.N.Y., for the U.S. and the National Credit Union Admin.

Edward C. Kesselman, Kostelanetz & Ritholz, New York City, for Bartholomew Rivieccio.

Alan L. Fuchsberg, The Jacob D. Fuchsberg Law Firm, New York City, for Bartholomew Rivieccio.

Edward S. Rudofsky, Zane & Rudofsky, New York City for Demetrios Karelas.

Murray L. Skala, Feder Kaszovitz Isaacson Weber & Skala, New York City, for John Villanella.

Andrew J. Levander, Shereff, Friedman, Hoffman & Goodman, New York City, for Bart Development & Const. Corp., 434 12th Street Corp., 440 12 Street Realty Corp., 444 12th Street Realty Corp., Klem Realty Associates, Inc., Cinema Realty Corp., Amber Realty Corp., 914 Eighth Avenue Realty Corp., Bid Realty Corp., Coral Realty Corp., 1113 8th Avenue Realty Corp., 83 Seventh Avenue Realty Corp., 512 Henry Street Associates, Inc., Rosebud Realty Corp., Alpha Berkeley Corp., Beta Berkeley Corp., 437 16th Street Realty Corp.

Henry H. Korn, Roth & Korn, New York City, for Isaac Erlich.

Donald I. Strauber, Chadbourne & Parke, Salon, Morrow & Dyckman, New York City, for Chemical Bank.

Christopher J. Panny, Brooklyn, N.Y., for Maral Funding Corp., Stanley Gallant, Walco Corp. Pension Plan, Mijal Equities Pension Plan.

Harvey Herbert, Ryba & Herbert, Brooklyn, N.Y., for Midtown Elevator, Inc.

J. Christopher Jensen, Cowan, Liebowitz & Latman, New York City, for Friends Realty Corp.

Gary Greenwald, Greenwald, Graubard & Cohen, Wurtsboro, N.Y., for Angelo D'Acunto.

Judd Burstein, New York City, for Edmund Lee.

Robert E. Katzberg, Kaplan & Katzberg, New York City, for Ian Grossfield.

Milton Morganstern, Brooklyn, N.Y., pro se.

Martin R. Sobel, James Robert Fauci, P.C., New York City, for Petri Maintenance Co.

Maria T. Jones, Sp. Asst. Corp. Counsel, New York City, for the City of New York.

Robert Abrams, Atty. Gen., New York City, for the State of N.Y.

Wendy S. Imber, Floral Park, N.Y., for Skyline Architects, P.C.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

### I. *Introduction*

These three actions stem from an alleged conspiracy to defraud the HYFIN Credit Union ("HYFIN"). In CV–86–1441 ("the United States action"), the government alleges that beginning on or before 1982 and continuing up to April 9, 1986, funds were directly and indirectly transferred from HYFIN to the defendants and used to purchase and develop numerous real properties. The government contends that more than $12 million was fraudulently transferred from HYFIN and never repaid.

HYFIN is an acronym for "Help Your Friend In Need." The credit union was chartered in 1955 to serve members of the HYFIN Society. On April 9, 1986, the New York State Superintendent of Banks took possession of HYFIN because of its unsound condition and irregularities in its accounts. The government alleges that a major reason for HYFIN's difficulties was the $12 million fraudulently funneled into real estate.

The National Credit Union Administration ("NCUA"), a co-plaintiff with the United States in the United States action, is an independent federal agency under 12 U.S.C. § 1752a(a). It supervises and regulates credit unions and insures accounts in state and federally chartered credit unions for up to $100,000. *Id.* § 1787.

On the night of April 9, 1986, when HYFIN was taken over by the Superintendent of Banks, it was merged into the Municipal Credit Union ("Municipal"). A predicate to the merger was the NCUA's guarantee to Municipal, pursuant to *id.* § 1788(a)(2), that it would guarantee Municipal against losses it sustained as a result of assuming HYFIN's liabilities. The NCUA agreed to bear all losses resulting from the real estate scheme and reserved the right to assert the claims that Municipal would have had, as HYFIN's successor, against the participants in the scheme.

The government represents that the NCUA has paid Municipal approximately $20 million because of HYFIN's losses and that further payments will likely be necessary. The United States action was commenced in an attempt to recoup the NCUA's losses to the extent they were caused by the alleged real estate conspiracy.

Three of the defendants in the United States action were members of HYFIN's Board of Directors who have pleaded guilty to conspiracy and mail fraud charges in connection with the real estate scheme. They are Edmund Lee, who was HYFIN's secretary and treasurer, Ian Grossfield, who was HYFIN's vice president, and Milton Morganstern, who was an attorney for HYFIN. Other defendants include Bartholomew Rivieccio, Demetrios Karelas, Isaac Erlich, and John Villanella, who are real estate developers and managers, as well as officers and directors of realty corporations in whose names the subject properties allegedly were acquired. The government alleges that Rivieccio controls defendant Bart Development & Construction Corp. ("Bart Development") and that it performed construction and development work on the properties.

The supplemental and amended complaint in the United States action alleges eight claims. Count I of the complaint seeks a constructive trust in favor of the government over the subject properties. Count II seeks at least $12 million, plus interest, on a conversion theory. Count III seeks a like amount on an unjust enrichment theory. Count IV seeks an accounting. Count V seeks the same amount as

counts II and, III, this time on a theory of breach of fiduciary duty. Count VI seeks a like amount on a fraud theory. Count VII alleges that Lee, Grossfield, and Morganstern are required, under section 468–a(2) of the New York Banking Law, to account for their official conduct. The count also seeks an order setting aside their assignment and transfer of HYFIN's assets as contrary to law. Finally, Count VIII charges that Lee, Grossfield, and Morganstern are liable for amounts illegally lent to non-members of HYFIN, pursuant to section 478 of the New York Banking Law. In addition to the damages specifically requested in each count, the government seeks, in the ad damnum clause of the complaint, punitive damages, costs, and attorneys' fees.

In the second action listed in the caption above, CV–86–1702 ("the Chemical action"), Chemical Bank seeks foreclosure of the mortgages on three properties as to which the government has sought imposition of a constructive trust. Chemical named the United States as a defendant and brought its action in federal court under the Quiet Title Act, which provides in part that "[t]he United States may be named as a party defendant in a civil action ... to adjudicate a disputed title to real property in which the United States claims an interest ...," 28 U.S.C. § 2409a(a). The federal district courts have exclusive original jurisdiction of actions under the Quiet Title Act. Id. § 1346(f).

Plaintiffs in CV–86–2715 ("the Maral Funding action") also seek foreclosure of a mortgage. That action was commenced in the Supreme Court of the State of New York, County of Kings, but was removed to this court by defendant United States of America.

The motions in these three actions were argued together. Ruling from the bench, the court:

(1) granted the government's motion for leave to file an answer out of time, Fed.R. Civ.P. 6(b), in the Maral Funding action; and

(2) denied Maral Funding's motion for appointment of a temporary receiver for the property that is the subject of the Mar-

al Funding action, with leave to renew the motion in the event circumstances change.

Shortly after oral argument, the court granted the NCUA's motion to be added as a plaintiff in the United States action. The opinion that follows treats the remaining motions, on which decision had been reserved.

## II. *Standing*

### A. *United States*

The moving defendants in the United States action—Rivieccio, Karelas, Erlich, Villanella, and the realty corporations—contend that the United States lacks standing and that the action, therefore, should be dismissed. The court is not persuaded by defendants' argument.

▮ The United States action was commenced by the government on behalf of the NCUA. According to the defendants, the government may not sue for the NCUA in the absence of statutory authority or the need to further a vital national interest or an integral attribute of sovereignty. It is true that no statute specifically authorizes the United States to sue on behalf of the NCUA, which has the power to sue and be sued in its own right, 12 U.S.C. § 1789. But the defendants' argument founders when they maintain that the NCUA and the United States "are not one." For purposes of commencing this action, the NCUA and the United States are sufficiently identical that the latter may sue on behalf of the former.

The court is aware of only one case in which the United States has sued on behalf of the NCUA. The first sentence of the opinion in that case commences: "This is a suit on behalf of the Administrator of the National Credit Union Administration (NCUA) by the United States. ..." *United ed States v. Alabama*, 434 F.Supp. 64, 65 (M.D.Ala.1977) (Johnson, C.J.). There are no further references to the government's right to sue on behalf of the NCUA. Apparently, the government's standing was not litigated, thus reducing the precedential value of the case on this point.

■ The government correctly argues that subject matter jurisdiction is conferred by 28 U.S.C. § 1345, which provides:

> Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress.

The undeniable presence of subject matter jurisdiction, *see United States v. Hill*, 694 F.2d 258, 268 (D.C.Cir.1982) (government does not require specific statutory authorization for particular action because section 1345 confers general jurisdiction), does not close the court's inquiry, because the question of standing is separate, *see Marshall v. Gibson's Products, Inc.*, 584 F.2d 668, 676 n. 10 (5th Cir.1978) (section 1345 provides subject matter jurisdiction over action by Secretary of Labor, but United States still must show standing to litigate); *United States v. County of Hawaii*, 473 F.Supp. 261, 263–64 (D.Haw.1979) (section 1345's grant of jurisdiction is sufficient to permit court to entertain suit, provided United States has standing).

■ On the standing question, the defendants emphasize that the NCUA operates independently and in a proprietary fashion. While the NCUA does, among other things, collect insurance premiums, 12 U.S.C. § 1782(c), and deposit the premiums into the National Credit Union Share Insurance Fund, *id.* § 1783(b), the NCUA is not the independent entity that the defendants perceive it to be. For one thing, the Insurance Fund is part of the Treasury of the United States. *Id.* § 1783(a). For another, the NCUA performs an important governmental function. In its report on the legislation that brought the NCUA into existence, the Senate Banking and Currency Committee stated its belief "that Federal credit unions have become such a significant component of our society that they need and deserve a more responsive and independent regulatory agency." S.Rep. No. 518, 91st Cong., 2d Sess., *reprinted in* 1970 U.S. Code Cong. & Admin.News 2479, 2480. The committee added:

> There are less [*sic*] banks in the United States than credit unions. Yet there are three separate and distinct Federal instrumentalities which deal with the regulation of the banks under their respective jurisdictions. There are less [*sic*] federally chartered savings and loan associations than there are federally chartered credit unions. Yet the Federal savings and loan asociations are under the independent regulation of the Federal Home Loan Bank Board.

*Id.; accord* H.R.Rep. No. 1457, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Admin.News 4166, 4167 ("Credit unions are the only federally chartered financial institutions that do not have a Federal program of savings or deposit insurance.").

The defendants are pleased to equate the NCUA with other federal agencies that insure financial institutions, such as the Federal Deposit Insurance Corporation ("FDIC"). In *Lapadula & Villani, Inc. v. United States*, 563 F.Supp. 782, 784 (S.D. N.Y.1983), the court held that "the FDIC is not an integral part of the governmental mechanism but is rather a separate legal entity serving essentially a proprietary rather than a sovereign function." According to the defendants, the NCUA is in the same position as the FDIC, thus depriving the government of standing to pursue this action.

*Lapadula* analyzed the role of the FDIC in a markedly different context. The question before the court was not whether the United States could sue on behalf of the FDIC, but whether the FDIC could claim an absolute priority over other creditors of liquidated corporations, pursuant to 31 U.S.C. § 191. In holding that the FDIC, unlike the Internal Revenue Service, was not "an integral part of the governmental mechanism" within the meaning of section 191, the court noted:

> The FDIC's profits do not inure to the benefit of the United States and its losses are not borne by the United States. Thus, the public treasury will be unaffected by the FDIC's success or failure in recovering the debts owed it as succes-

sor in interest to the claims of the Franklin National Bank.

563 F.Supp. at 784.

Unlike the FDIC in *Lapadula,* the NCUA does not seek to jump to the front of a line of creditors of HYFIN. The NCUA does not seek any advantage based on its status as a governmental agency. Instead, the government hopes to recoup funds that one of its agencies—the NCUA—has obligated itself to expend. The NCUA's obligation was incurred when it performed an important governmental function—insuring credit union deposits. For purposes of the government's ability to sue on its behalf, the NCUA is "an agency selected by Government to accomplish purely governmental purposes," *Cherry Cotton Mills, Inc. v. United States,* 327 U.S. 536, 539, 66 S.Ct. 729, 730, 90 L.Ed. 835 (1946), and the court concludes that the United States has standing to assert the present claims for the NCUA. *Cf. United States v. City of Pittsburgh,* 757 F.2d 43, 45 (3d Cir.1985) (despite lack of immediate pecuniary interest in outcome of litigation, government had standing to bring action contending that city business privilege tax interfered with operation of federal judicial system).

The court's conclusion that the United States has standing implies that the government is also the real party in interest under rule 17(a) of the Federal Rules of Civil Procedure. The court sees no harm, however, in adhering to its prior ruling permitting joinder of the NCUA as a plaintiff, and that ruling will not be disturbed, in light of the court's decision, *infra,* to defer ruling on the NCUA's standing.

### B. *NCUA*

The question of the NCUA's standing arises in a context different from the question of United States standing. The standing question with regard to the United States was: "May the United States sue on behalf of its agency, the NCUA?" That question has been answered affirmatively, *supra.* The standing question with regard to the NCUA is: "Have HYFIN's claims against the defendants been assigned ef-

fectively to the NCUA?" The first question presented a legal issue readily answerable on a motion to dismiss. The second question is fact-intensive and requires an analysis of what happened and what was intended when HYFIN was taken over by the Superintendent of Banks and merged into Municipal on the night of April 9, 1986.

The complaint alleges that the assignment took place on April 9 and August 8:

7. On April 9, 1986, in order to facilitate the merger of Hyfin into Municipal, the NCUA guaranteed Municipal against all losses sustained by Hyfin as a result, *inter alia,* of defendants' fraudulent and dishonest acts. This guarantee contemplated the purchase by the NCUA of certain of Hyfin's assets and liabilities and encompassed the assignment to the NCUA of all of Municipal's claims and causes of action against defendants.

8. On August 8, 1986, the NCUA and Municipal entered into a written assignment of Municipal's claims and causes of action against the defendants.

The complaint's factual allegations regarding the NCUA's standing suffice to withstand a motion to dismiss. Both sides have gone beyond the face of the complaint in an attempt to parse the documents that purport to effect an assignment and to analyze who promised what to whom at or about the time of the Hyfin-Municipal merger. Although both sides have briefed the issue in depth, the court is reluctant to convert the motion to dismiss into one for summary judgment, *see* Fed.R.Civ.P. 12(b), because there has yet to be discovery on the question. During oral argument, counsel for defendant Demetrios Karelas, speaking for all the defendants, agreed to the court's suggestion, Transcript of Oral Argument at 54, that discovery come first, to be followed by a possible motion for summary judgment, *id.* at 68–69. Therefore, insofar as the defendants seek dismissal of the action on the ground that the NCUA lacks standing, the motion is denied. Following discovery, the defendants will be permitted to move for summary judgment on this theory. The questions of how discovery should be scheduled or limited, and

when the motion for summary judgment should be made, will be addressed at the status conference discussed at the close of this memorandum and order.

### III. *Sufficiency of the Complaint*

Part II of this memorandum and order dealt with the sufficiency of the complaint in the United States action to demonstrate standing by the United States and the NCUA. Part III deals with the sufficiency of the complaint under rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. The defendants have moved to dismiss the complaint on the theory that it does not (1) plead fraud with particularity, as required by rule 9(b) and (2) state a claim upon which relief can be granted, as required by rule 12(b)(6).

#### A. *Rule 9(b)*

Rule 9(b) provides:

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

The explication of these words has occupied countless pages in the federal reports. The cases provide ample material for both sides of a hypothetical debate between pleaders of fraud and those accused of fraud.

Plaintiff: "Since the rule is a special pleading requirement and contrary to the general approach of simplified pleading adopted by the federal rules, its scope of application should be construed narrowly and not extended to other legal theories or defenses." 5 C. Wright & A. Miller, Federal Practice and Procedure § 1297, at 405 (1969) (footnote omitted).

Defendant: Nevertheless, "the complaint must allege with some specificity the acts or statements constituting the fraud," because "[m]ere conclusory allegations that the defendant's conduct was fraudulent are not enough." *Bresson v. Thomson McKinnon Securities, Inc.,* 641 F.Supp. 338, 346 (S.D.N.Y.1986) (citing *Ross v. A.H. Robins Co.,* 607 F.2d 545, 557 (2d Cir.1979),

*cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980), and *Decker v. Massey-Ferguson, Ltd.,* 681 F.2d 111, 114 (2d Cir.1982)).

Plaintiff: That may be so, but "Rule 9(b) does not require a plaintiff to recite or plead detailed evidentiary matter, and was not intended to make pleading fraud a throwback to code pleading." *Cohen v. Goodfriend,* 642 F.Supp. 95, 102 (E.D.N.Y. 1986) (citation omitted).

Defendant: "Some tension undoubtedly exists between the liberal pleading rules of Fed.R.Civ.P. 8, which encourages 'short and concise' pleadings, and the particularity requirement of Rule 9(b)," *Merrit v. Libby, McNeill & Libby,* 510 F.Supp. 366, 373 (S.D.N.Y.1981), but rule 9(b) is "an exception to the generally liberal scope of pleadings allowed by Rule 8," *Luce v. Edelstein,* 802 F.2d 49, 54 (2d Cir.1986).

Plaintiff: The ideals of rule 8 still apply, because rule 9(b) requires no more than giving the "defendant notice of precisely what he is charged with," *Goldman v. Belden,* 754 F.2d 1059, 1070 (2d Cir.1985).

Defendant: In order to let the defendant know what he is charged with, the plaintiff must specify the time, place, speaker, and content of the alleged misrepresentations. *Luce, supra,* 802 F.2d at 54.

Plaintiff: On the other hand, "[w]here plaintiff pleads as to matters peculiarly within the adverse party's knowledge, he is entitled to rely on information and belief in support of his allegations." *Somerville v. Major Exploration, Inc.,* 576 F.Supp. 902, 910 (S.D.N.Y.1983); *accord Segal v. Gordon,* 467 F.2d 602, 608 (2d Cir.1972); *FDIC v. Kerr,* 637 F.Supp. 828, 834 (W.D.N.C. 1986); *Rich-Taubman Associates v. Stamford Restaurant Operating Co.,* 587 F.Supp. 875, 880 (S.D.N.Y.1984); *Merrit, supra,* 510 F.Supp. at 373; *Green v. Hamilton International Corp.,* 437 F.Supp. 723, 729 (S.D.N.Y.1977).

Defendant: Nevertheless, "[a] complaint alleging fraud should be filed only after a wrong is reasonably believed to have occurred; it should serve to seek redress for

a wrong, not to find one." *Segal, supra,* 467 F.2d at 607–08.

That this hypothetical dialogue is inexhaustible does not mean that there are no real standards under rule 9(b) or that a court may resolve a 9(b) problem simply by citing the cases from one side or the other of the debate. Instead, 9(b) particularity is much like obscenity, legally speaking: "I know it when I see it," *Jacobellis v. Ohio,* 378 U.S. 184, 197, 84 S.Ct. 1676, 1683, 12 L.Ed.2d 793 (1964) (Stewart, J., concurring).

The necessary legal judgment, although somewhat impressionistic, is informed by the purposes behind rule 9(b). The threefold basis for the rule lies in the need "to provide a defendant with fair notice on the basis of a plaintiff's claim, to protect a defendant's reputation from groundless accusations of fraud, and to prevent strike suits brought for settlement value." *Cohen, supra,* 642 F.Supp. at 102; *accord Bresson, supra,* 641 F.Supp. at 346 n. 6. It should be emphasized that the fair notice requirement applies to each defendant when multiple defendants have been named. *See Luce, supra,* 802 F.2d at 54 (discussing need to connect particular representations to particular defendants); *Bosio v. Norbay Securities, Inc.,* 599 F.Supp. 1563, 1570 (E.D.N.Y.1985) (each defendant is entitled to know circumstances surrounding fraud with which he stands charged).

Additionally, the court notes that its 9(b) analysis does not apply to every claim made by the government against the moving defendants. This court has previously held that 9(b)'s particularity requirement covers allegations of fraud and mistake, and does not extend to claims of breach of fiduciary duty, *Bosio, supra,* 599 F.Supp. at 1570, or conversion, *id.* at 1571. The same applies to the unjust enrichment claim of count III. The 9(b) analysis is relevant only to the claims sounding in fraud.

■ Against this background, the court considers whether the pending complaint satisfies the strictures of rule 9(b). The first question is: Do the defendants know what the United States is claiming? In other words, are they on notice of the accusations against them? *See Goldman, supra,* 754 F.2d at 1070; *Morris v. Gilbert,* 649 F.Supp. 1491, 1495 (E.D.N.Y.1986). Reading the complaint "as a whole, drawing all inferences favorable to the pleader," *Yoder v. Orthomolecular Nutrition Institute, Inc.,* 751 F.2d 555, 562 (2d Cir.1985), and recognizing that "less particularity should be required" when the pleader aserts that third persons were defrauded, *Segal, supra,* 467 F.2d at 607 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1298, at 413 (1969)), the court is satisfied that these defendants have fair notice of the government's claim. The complaint identifies the relationship among the individual moving defendants—Rivieccio, Karelas, Erlich, and Villanella—in its allegation that they were engaged in the acquisition, development, and management of real property and that the latter three were associated with Rivieccio. The complaint identifies the defendant realty corporations and the properties they own, and alleges the relationships Rivieccio, Karelas, Erlich, and Villanella had with those corporations.

■ As to the nature of the fraud that is alleged, the government has alleged the period of the fraud, the fraudulent scheme, and its purpose, means, and result. The complaint charges that there were direct and indirect transfers from HYFIN's general account at Manufacturers Hanover Trust Company to the defendant realty corporations with the purpose of enabling the corporations to purchase certain specified properties. The government further alleges that the fraud was effected by charging the transfers of funds to dormant HYFIN accounts and by creating loan applications in the names of fictitious individuals. According to the complaint, Rivieccio, Karelas, Villanella, and Erlich received HYFIN funds on behalf of the realty corporations.

Given this amount of detail—and the understanding that rule 9(b) does not require the recitation or pleading of detailed evidentiary matter—it appears to the court that the moving defendants have been put on notice of plaintiffs' claims. Undoubted-

ly, the defendants will have an opportunity to better prepare their defenses after they have obtained discovery. Withal, they are sufficiently on notice to satisfy rule 9(b).

Fair notice is only the first rationale for rule 9(b); the rule is designed also to protect defendants from groundless fraud accusations and to prevent strike suits. In light of the guilty pleas of defendants Lee, Grossfield, and Morganstern, and the statements made in open court during their allocutions, it is apparent that the plaintiffs have a good faith basis for charging all the defendants with fraud. This is not to prejudge the merits of the fraud claims—or of any other claims in the complaint—but merely to explain why the second and third rationales behind rule 9(b) do not deter the court from holding that the complaint should survive examination under that rule. Therefore, the motion to dismiss predicated on rule 9(b) is denied.

### B. *Rule 12(b)(6)*

In addition to their claim that the United States complaint fails under rule 9(b), which the court has rejected, the moving defendants contend that the complaint fails to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6). The court treats the 12(b)(6) attacks on the claims advanced in the United States complaint *seriatim.*

### 1. *Constructive Trust*

The first twenty-nine paragraphs of the complaint describe the parties and the alleged conspiracy. The first count of the complaint—for a constructive trust—appears in paragraph 30 and reads:

As a result of the foregoing fraud, conspiracy and breaches of fiduciary duty and trust and participation in breaches of fiduciary duty and trust by defendants, a constructive trust should be impressed upon the above-named real properties in favor of the United States; title to the properties should be declared to be held by defendant Realty Corporations in trust for the use and benefit of the United States; and said defendants should be directed to convey said proper-

ties to the United States by a good and sufficient deed, free of any encumbrances whatsoever. A constructive trust should also be impressed upon the proceeds and profits of such properties and the disposition thereof.

Because the court has found that the complaint survives the rigors of rule 9(b), one aspect of the moving defendants' attack on the constructive trust claim—i.e., that the count fails to state a cognizable claim because its foundation is deficient—must be rejected summarily. The remaining question is whether the complaint pleads a valid claim for a constructive trust under New York law, which, the parties agree, governs.

The Court of Appeals for the Second Circuit has twice reviewed New York law on constructive trusts in recent months. The court summarized the applicable law in *Republic of Philippines v. Marcos*, 806 F.2d 344 (2d Cir.1986), *cert. dismissed,* —— U.S. ——, 107 S.Ct. 1597, 94 L.Ed.2d 784 (1987):

As Judge Cardozo put it when he was on the New York Court of Appeals, "A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee." *Beatty v. Guggenheim Exploration Co.*, 225 N.Y. 380, 386, 122 N.E. 378, 380 (1919). The court " 'reserves freedom to apply this remedy to whatever knavery human ingenuity can invent.' " *Simonds v. Simonds*, 45 N.Y.2d 233, 241, 380 N.E.2d 189, 194, 408 N.Y.S.2d 359, 363 (1978) (quoting Bogert, *Trusts and Trustees* § 471 at 29 (2d ed. rev. 1978)). And, " '[a] constructive trust will be erected wherever necessary to satisfy the demands of justice.... [I]ts application is limited only by the inventiveness of men who find new ways to enrich themselves unjustly by grasping what should not belong to them.' " *Id.* at 241, 380 N.E.2d at 194, 408 N.Y.S.2d at 363 (quoting *Latham v. Father Divine*, 299

N.Y. 22, 27, 85 N.E.2d 168, 170 (1949)). *See also Restatement of Restitution* § 160 comment a (1937) (constructive trust is simply a remedy to prevent unjust enrichment and may or may not involve a fiduciary relationship); *id.* § 160 comment g (stating that where property is held by one person upon a constructive trust for another and the former transfers the property to a third person who is not a bona fide purchaser, the interest of the beneficiary is not cut off); *id.* § 168 (same).

*Id.* at 355.

More recently, the Second Circuit has summarized the elements of a constructive trust claim under New York law:

> To be entitled to a constructive trust under New York law, a party must establish four elements: (1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer made in reliance on that promise; and (4) unjust enrichment.

*Brand v. Brand,* 811 F.2d 74, 77 (2d Cir. 1987) (citing *Bankers Security Life Insurance Society v. Shakerdge,* 49 N.Y.2d 939, 939, 406 N.E.2d 440, 440, 428 N.Y.S.2d 623, 624 (1980) (per curiam); *Sharp v. Kosmalski,* 40 N.Y.2d 119, 121, 351 N.E.2d 721, 723, 386 N.Y.S.2d 72, 75 (1976)).

The four elements enumerated in *Brand* are not talismanic. *See Coco v. Coco,* 107 A.D.2d 21, 24, 485 N.Y.S.2d 286, 289 (2d Dep't), *appeal dismissed,* 65 N.Y.2d 637 (1985); *Reiner v. Reiner,* 100 A.D.2d 872, 874, 474 N.Y.S.2d 538, 541 (2d Dep't 1984) (per curiam). The New York Court of Appeals has held that the factors may be "useful," but that it is possible to have a constructive trust in the absence of a confidential or fiduciary relationship. *Simonds, supra,* 45 N.Y.2d at 241, 380 N.E.2d at 194, 408 N.Y.S.2d at 363; *cf. Coco, supra* (constructive trust in absence of unjust enrichment). The rationale for the flexible rule of *Simonds* is the equitable nature of the remedy. *See* 45 N.Y.2d at 241, 380 N.E.2d at 193, 408 N.Y.S.2d at 363. "[E]quity regards as done that which should have been done." *Id.* at 240, 380 N.E.2d at 193, 408 N.Y.S.2d at 362 (citations omitted).

In *Simonds,* plaintiff was the first wife of a decedent; defendant was the decedent's second wife. *Id.* at 236, 380 N.E.2d at 191, 408 N.Y.S.2d at 360. Plaintiff's separation agreement with the decedent, the terms of which were incorporated into a divorce decree, provided that the decedent had to maintain at least $7,000 of life insurance of which plaintiff would be the beneficiary. *Id.* at 237, 380 N.E.2d at 191, 408 N.Y.S.2d at 361. At decedent's death, none of his life insurance policies named plaintiff as a beneficiary. *Id.* at 238, 380 N.E.2d at 191–92, 408 N.Y.S.2d at 361. The court of appeals upheld a constructive trust in favor of plaintiff, even though defendant did nothing wrong.

> [T]he purpose of the constructive trust is prevention of unjust enrichment.
>
> Unjust enrichment, however, does not require the performance of any wrongful act by the one enriched. Innocent parties may frequently be unjustly enriched. What is required, generally, is that a party hold property "under such circumstances that in equity and good conscience he ought not to retain it." A bona fide purchaser of property upon which a constructive trust would otherwise be imposed takes free of the constructive trust, but a gratuitous donee, *however innocent,* does not.

*Id.* at 242, 380 N.E.2d at 194, 408 N.E.2d at 364 (emphasis added) (citations omitted); *accord, e.g., Blusal Meats, Inc. v. United States,* 638 F.Supp. 824, 831 (S.D.N.Y.1986) (on unjust enrichment claim, plaintiff need show only that defendant was enriched at plaintiff's expense and that equity and good conscience required return of the money; proof of wrongful conduct not necessary), *aff'd,* 817 F.2d 1007, 1008 (2d Cir. 1987); *see generally Bergeron v. Estate of Loeb,* 777 F.2d 792, 797 (1st Cir.1985) (noting New York rule permitting constructive trust upon property transferred to innocent third party without joinder of representative of decedent who committed alleged fraud), *cert. denied,* — U.S. —, 106 S.Ct. 1517, 89 L.Ed.2d 915 (1986).

Against this background, the court determines that the government has

pleaded adequately its claim for a constructive trust. As discussed earlier, the complaint alleges a conspiracy to defraud HYFIN by diverting millions of dollars to the individual moving defendants on behalf of the realty corporations with which they were associated. It is alleged that the loans were not supported by collateral or documentation, and that upwards of $12 million has yet to be repaid. While the complaint is not phrased in terms of the four factors that New York courts consider prior to impressing a constructive trust, this is not a pleading defect that warrants dismissal. At a later stage, the court will be in a position to determine whether the government is entitled to the broad relief available at equity. For now, the government has the right to pursue such relief.

### 2. Unjust Enrichment

The third count of the complaint alleges that the defendants received from HYFIN funds to which they were not entitled and that they were unjustly enriched in an amount exceeding $12 million. The individual moving defendants—Rivieccio, Karelas, Erlich, and Villanella, as opposed to the corporate moving defendants (the realty corporations)—argue that the third count fails to state a claim, because the government has not alleged that they personally received HYFIN funds. Because the court finds the moving defendants' reading of the complaint unduly technical, the motion to dismiss the third count is denied.

To recover on a theory of unjust enrichment under New York law, a party must establish not only that there was enrichment, but that the enrichment was at the plaintiff's expense, and that the circumstances dictate that, in equity and good conscience, the defendant should be required to turn over its money to the plaintiff. *Dolmetta v. Uintah National Corp.*, 712 F.2d 15, 20 (2d Cir.1983); *see also McGrath v. Hilding*, 41 N.Y.2d 625, 629, 394 N.Y.S.2d 603, 606, 363 N.E.2d 328, 330 (1977). *Universal City Studios, Inc. v. Nintendo Co.*, 797 F.2d 70, 79 (2d Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 578, 93 L.Ed.2d 581 (1986); *accord, e.g., Reprosystem, B.V. v.*

*SCM Corp.*, 727 F.2d 257, 263 (2d Cir.), *cert. denied*, 469 U.S. 828, 105 S.Ct. 110, 83 L.Ed.2d 54 (1984); *Blusal Meats, Inc. v. United States*, 638 F.Supp. 824, 831 (S.D.N.Y.1986), *aff'd*, 817 F.2d 1007, 1008 (2d Cir.1987).

The New York Court of Appeals has held:

A conclusion that one has been unjustly enriched is essentially a legal inference drawn from the circumstances surrounding the transfer of property and the relationship of the parties. It is a conclusion reached through the application of principles of equity.

*Sharp v. Kosmalski*, 40 N.Y.2d 119, 123, 351 N.E.2d 721, 724, 386 N.Y.S.2d 72, 76 (1976).

Here, paragraph 22 of the complaint alleges that HYFIN funds were transmitted to and received by Rivieccio, Karelas, Villanella, and Erlich on behalf of the realty corporations. The realty corporations allegedly used these funds to purchase certain real property, while the individual moving defendants covered up the scheme. Complaint paras. 25, 28. The complaint further alleges that the HYFIN funds transferred "to or for the benefit of the defendants ... have not been repaid." *Id.* para. 29.

█ The implication of the complaint is that Rivieccio, Karelas, Villanella, and Erlich received HYFIN funds and passed the money on to realty corporations that they owned or controlled, or with which they were associated. By seeking relief on a claim of unjust enrichment, the government asks only that the money be returned. The government is not concerned with who physically controls the funds; it might not be able to answer that question at this point. Because the government seeks equitable relief, the court may be obligated to pierce corporate veils or otherwise determine where the money went. At the pleading stage, at least, the government has satisfied the requirements of an unjust enrichment claim against the individual moving defendants. Their motion to dismiss the third count is therefore denied.

### 3. *Accounting*

The moving defendants, both individuals and corporate, seek dismissal of the fourth count of the complaint, which seeks an accounting. They argue that an accounting is unavailable when no fiduciary relationship exists between the party seeking the accounting and the party required to account. But the government correctly responds that a person who participates with a fiduciary in a breach of trust may be held to account as a constructive trustee. *Marcus v. Marcus*, 92 A.D.2d 887, 887–88, 459 N.Y.S.2d 873, 874 (2d Dep't 1983) (per curiam); *see Whitney v. Citibank, N.A.*, 782 F.2d 1106, 1115 (2d Cir.1986); *Japcap Establishment, Inc. v. Trust for Cultural Resources of the City of New York*, 115 A.D.2d 382, 384, 495 N.Y.S.2d 669, 671 (1st Dep't 1985) (per curiam). To the extent that the individual moving defendants contend that the HYFIN money did not come to rest in their possession, the answer is the same as it was on the unjust enrichment claim: time will tell. The motion to dismiss the accounting claim is denied.

### 4. *Fraud*

The sixth count of the United States complaint seeks money damages for an alleged fraud upon HYFIN and its members. The court's denial of the motion to dismiss under rule 9(b) necessitates rejection of the rule 12(b)(6) attack on the fraud count. The government has not attempted to plead a claim for civil conspiracy; there is no such claim under New York law. *See Durante Brothers & Sons, Inc. v. Flushing National Bank*, 755 F.2d 239, 251 (2d Cir.), *cert. denied*, 473 U.S. 906, 105 S.Ct. 3530, 87 L.Ed.2d 654 (1985). Instead, the sixth count alleges that the defendants conspired to defraud HYFIN and its members. This form of pleading has been approved by our appellate court:

A conspiracy is alleged for the purpose of showing that a wrong was committed jointly by the conspirators and that, because of their common purpose and interest, the acts of one may be imputed to the others. *Original Ballet Russe, Ltd. v. Ballet Theatre, Inc.*, 133 F.2d 187, 189 (2d Cir.1943). The allegation "is merely the string whereby the plaintiff seeks to tie together those who, acting in concert, may be held responsible in damages for any overt act or acts." *Rutkin v. Reinfeld*, ..., 229 F.2d [248,] 252 [ (2d Cir.), *cert. denied*, 352 U.S. 844, 77 S.Ct. 50, 1 L.Ed.2d 60 (1956) ].

*Grove Press, Inc. v. Angleton*, 649 F.2d 121, 123 (2d Cir.1981); *accord Lumbard v. Maglia, Inc.*, 621 F.Supp. 1529, 1537 (S.D. N.Y.1985); *Valdan Sportswear v. Montgomery Ward & Co.*, 591 F.Supp. 1188, 1191 (S.D.N.Y.1984). For the foregoing reasons, the motion to dismiss the sixth count is denied.

### 5. *Banking Law Claims*

The seventh count of the United States complaint alleges that HYFIN insiders Lee, Grossfield, and Morganstern neglected, failed to perform, and violated their duties in the management and disposition of the credit union's assets. The government contends that *all* of the defendants are liable under statute, N.Y. Banking Law § 468–a(2) (McKinney 1971), to account for this conduct. Similarly, the eighth count alleges that Lee, Grossfield, and Morganstern permitted and participated in loans to nonmembers of HYFIN. According to the government, *all* defendants are liable for the amount illegally loaned, *id.* § 478.

The moving defendants contend that sections 468–a(2) and 478 do not apply to them. Section 468–a(1) requires directors and officers of credit unions to discharge their duties prudently and in good faith. Section 468–a(2) provides:

An action may be brought against one or more directors or officers of a credit union to procure a judgment for the following relief:

(a) To compel the defendant to account for his official conduct in the following cases:

(1) The neglect of, or failure to perform, or other violation of his duties in the management and disposition of the credit union's assets committed to his charge.

(2) The acquisition by himself, transfer to others, loss or waste of the credit union's assets due to any neglect of or failure to perform, or other violation of his duties.

(b) To set aside a conveyance, assignment or transfer of the credit union's assets by one or more directors or officers, contrary to a provision of law, where the transferee knew the purpose of the transfer.

(c) To enjoin such a conveyance, assignment or transfer of the credit union's assets by one or more of the directors or officers where there is good reason to apprehend that it will be made.

On its face, at least, the reach of section 468–a(2) does not extend beyond directors and officers of credit unions. Similarly, section 478 deals only with officers, directors, and members of credit union committees. That statute provides:

Any officer, director or member of a committee of a credit union who knowingly permits a loan to be made or participates in a loan to a non-member of the corporation shall be guilty of a misdemeanor and shall be primarily liable to the corporation for the amount thus illegally loaned, and the illegality of such a loan shall be no defense in any action by the corporation to recover the amount lent.

Faced with this statuory language, the government responds by citing *Laub v. Genway Corp.*, 60 F.R.D. 462 (S.D.N.Y. 1973). There, Judge Gurfein held:

The corporation is the victim of the fraud practiced on it by its fiduciaries. And those persons acting in concert with the fiduciaries may also be held liable for the fraud perpetrated on the corporation.

*Id.* at 466.

In *Laub*, however, the court was not concerned with a claim under section 468–a(2), under section 478, or indeed under any statute. Instead, there was a contention that plaintiff participated in a plan whereby defendant was fraudulently induced to enter into a lease. *Id. Laub*, therefore, is not authority for the proposition that the New York Banking Law creates a right of action against the moving defendants as conspirators or aiders and abettors. Nor is the court aware of any case that broadens the construction of sections 468–a(2) and 478 to the extent sought by the government. The rules of construction of New York statutes do not suggest that this court should be the first to read the Banking Law in the way sought by the government. For instance, in construing New York statutes, "[t]he legislative intent is to be ascertained from the words and language used, and the statutory language is generally construed according to its natural and most obvious sense, without resorting to an artificial or forced construction." 1 McKinney's Consolidated Laws of New York Annotated: Statutes § 94 (1971). Also, "[w]ords of ordinary import used in a statute are to be given their usual and commonly understood meaning, unless it is plain from the statute that a different meaning is intended." *Id.* § 232. Finally, "[w]ords of technical or special meaning are construed according to their technical sense, in the absence of anything to indicate a contrary legislative intent." *Id.* § 233.

 "In matters of statutory construction ... it makes a great deal of difference whether you start with an answer or with a problem." Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum.L. Rev. 527, 529 (1947). Coming to these statutes with a question as to their reach, the court discerns no reason to construe them other than as words of ordinary meaning and concludes that they do not embrace the moving defendants. Accordingly, the seventh and eighth counts are dismissed as against the moving defendants. They remain in place as against Lee, Grossfield, and Morganstern.

### 6. *Alpha Berkeley and Beta Berkeley*

Two of the corporate defendants, Alpha Berkeley Corp. and Beta Berkeley Corp., seek dismissal of the claims against them on the ground that they were named as recipients of certain real property in the original complaint but omitted in the supplemental and amended complaint. Ac-

cording to Alpha and Beta, this shows that the government no longer has a claim against them, and they should be dismissed under rule 12(b)(6).

The government explains that it had initially believed that Alpha and Beta purchased certain properties with HYFIN funds, and alleged as much in the original complaint. Later, it was learned that the properties had not been purchased, and the government removed the notices of pendency as to the properties as well as removing the relevant allegation from the supplemental and amended complaint. But the government still contends that Alpha and Beta received money from HYFIN and have not paid it back. This allegation remains in the amended complaint. Alpha and Beta's motion to dismiss is denied.

## IV. *Notices of Pendency*

On the same day that the United States commenced its action by filing a complaint, May 5, 1986, it also filed a notice of pendency against certain real property owned by the defendant realty corporations. Plaintiffs in the Chemical and Maral Funding actions have also filed notices of pendency, as have plaintiffs in related actions that are not the subject of the present motions. The moving corporate defendants seek to have the notices of pendency cancelled and request, as well, that the United States be required to pay any costs and expenses occasioned by the filing and cancellation of the notices, pursuant to section 6514(c) of the New York Civil Practice Law and Rules ("The court, in an order cancelling a notice of pendency under this section, may direct the plaintiff to pay any costs and expenses occasioned by the filing and cancellation, in addition to any costs of the action.").

Much of what the defendants have said about the notices of pendency need not be discussed in light of the court's earlier holdings. That is to say, in view of the finding that the pleading requirements of rules 9(b) and 12(b)(6) have been met, the notices cannot be cancelled on the theory that they are not predicated upon valid legal claims. What is more, the court has determined that the United States has

standing to pursue this action and rejects the defense argument that the government lacked standing to file a lis pendens.

There remains three arguments advanced by the defendants against the validity of the notices of pendency: (1) the government's ex parte filing of a lis pendens deprived the defendants of substantial property rights without a hearing, in violation of the fifth amendment's due process clause; (2) the lis pendens was filed in bad faith; and (3) the government's filing of a supplemental and amended complaint cannot validate the improperly filed lis pendens retroactively. For the reasons that follow, the court rejects these attacks on the lis pendens and denies the motion to cancel.

### A. *Due Process*

To the surprise of one state court, the constitutionality of New York's lis pendens provisions has not been much scrutinized. *Hercules Chemical Co. v. VCI, Inc.*, 118 Misc.2d 814, 814–15, 462 N.Y.S.2d 129, 130–31 (Sup.Ct.N.Y.Co.1983). The *Hercules* court avoided decision on the issue by directing the completion of discovery and permitting renewal of a motion to cancel the lis pendens thereafter. *Id.* at 826, 462 N.Y.S.2d at 137.

The most comprehensive discussion of the due process implications of a notice of pendency appeared in the opinions of the panel in *Chrysler Corp. v. Fedders Corp.*, 670 F.2d 1316 (3d Cir.1982). The court unanimously agreed on reversal of a district court order that held New Jersey's lis pendens statute unconstitutional, but the panel members disagreed on the reasons why the statute passed muster. Judge Sloviter's majority opinion assumed that the statutory scheme affected a sufficient taking to trigger due process analysis. *Id.* at 1324–25. Alone on the panel, she also assumed that the statute gave rise to state action. *Id.* at 1327; *see id.* at 1334 (Adams, J., concurring) (not reaching state action issue); *id.* at 1337–38 (Hunter, J., concurring) (finding no state action). Judge Sloviter concluded that the New Jersey scheme complied with due process, because it com-

ported with fundamental fairness. *Id.* at 1327–31. This was the ground on which Judge Adams concurred. *Id.* at 1334.

■■■■ While this court finds much merit in Judge Sloviter's careful opinion, it is persuaded by Judge Hunter's analysis, which applies with equal effect to the New York lis pendens provisions. Indeed, both Judge Sloviter, *id.* at 1324, and Judge Adams, *id.* at 1333, recognized the force of Judge Hunter's argument that the statute did not effect a taking. This court agrees with Judge Hunter that the filing of a lis pendens does not constitute a taking for due process purposes. *Cf. Batey v. Digirolamo,* 418 F.Supp. 695, 697 (D.Haw.1976) (lis pendens poses only a potential cloud on title; injury to defendants is speculative).

The doctrine of lis pendens was formally recognized in New York as far back as 1815, and its roots in the common law stretch back to the early seventeenth century and beyond. *See 5303 Realty Corp. v. O & Y Equity Corp.,* 64 N.Y.2d 313, 318, 476 N.E.2d 276, 279, 486 N.Y.S.2d 877, 880 (1984). At common law, one who took title to property that was the subject of litigation did so subject to the outcome of the action, even if he lacked actual notice. *Chrysler Corp., supra,* 670 F.2d at 1319. State legislatures enacted lis pendens statutes "to ameliorate the harshness of the common law doctrine." *Id.* at 1320. The doctrine of lis pendens also helped preserve the property in question so that a court's final judgment would be effective. *Id.* at 1319; *accord 5303 Realty Corp., supra,* 64 N.Y.2d at 319, 476 N.E.2d at 280, 486 N.Y.S.2d at 881 (doctrine was designed to assure court's ability to effect justice by preserving power over property; harsh impact on innocent purchasers was diminished by requirement that notice of pendency be filed in central registry).

New York's lis pendens statute, like the New Jersey statute considered in *Chrysler Corp.,* does not detract from a landowner's possession, use, or enjoyment of his realty. Nor does it prevent a sale of the property. *See Chrysler Corp., supra,* 670 F.2d at 1335 (Hunter, J., concurring). To the extent " 'something of worth' was taken, it

was taken *by the suit itself."* *Id.* (emphasis added). As Judge Hunter put it:

> It is no doubt true that a prospective purchaser would be made cautious by the notice of lis pendens, but that purchaser would be no more cautious than if he had obtained notice of the Chrysler suit by any other means. *It is the underlying claim and not the notice that would make a buyer cautious.* The statute acts only to provide a means by which a potential purchaser can be assured of actual notice of a claim. Under the traditional doctrines of notice and bona fide purchaser, a buyer with notice of Chrysler's claim would—even without the lis pendens—take subject to the equities Chrysler asserts. The statute merely replaced the common law fiction of constructive notice with a more realistic means of ensuring actual notice.

*Id.* (emphasis in original; citations omitted).

■■■■ In the case at bar, had the government advertised its claim against the subject properties in every newspaper and on every television and radio station in the metropolitan area, the defendants would be hard-pressed to argue that there had been a taking. Because of the availability of the provisional remedy of lis pendens, the government was able to give more effective notice than could be achieved by the advertising hypothetical, with the expenditure of far less effort and money. This court is not persuaded that the effectiveness and efficiency of the lis pendens remedy render the remedy a taking for due process purposes. Therefore, it is not necessary for the court to reach the questions of state action and fundamental fairness. The New York lis pendens statute survives due process attack because it does not effect a taking.

**B. *Bad Faith***

In support of their argument that the government filed its lis pendens in bad faith, the defendants point to a statement made by an assistant United States attorney to the press, which included an observation that filing of the lis pendens would ensure that the subject properties could not

be alienated. Section 6514(b) of the New York Civil Practice Law and Rules permits judicial cancellation of a notice of pendency "if the plaintiff has not commenced or prosecuted the action in good faith."

> In seeking to vacate a *lis pendens* based on a claimed lack of good faith, however, the burden is upon defendants to show that plaintiffs lacked good faith in their commencement or prosecution of the action. Nor, is the burden easily met since it has been held that the presence of *"any* cognizable claim" is sufficient to establish good faith and there must be at least a substantial question to show the absence of good faith.

*Weksler v. Yaffe*, 129 Misc.2d 633, 635, 493 N.Y.S.2d 682, 685 (Sup.Ct. Kings Co.1985) (emphasis in original).

■ Here, one statement by a government attorney cannot begin to overcome the numerous indicia of good faith that surround the filing of this action and the lis pendens. Most significant is the information to which this court has been exposed during the guilty plea allocutions of HY-FIN insiders Lee, Grossfield, and Morganstern, as well as the testimony the court has heard in the trial of *United States v. Turoff*, 652 F.Supp. 707 (E.D.N.Y. 1987). The claim for a constructive trust, as well as the other claims advanced in the complaint, cannot be said to have a bad faith foundation on this record. *See Shihab v. 215–217 West 108th Street Associates*, 133 Misc.2d 145, 150, 506 N.Y.S.2d 651, 654 (Civ.Ct.N.Y.Co.1986). The same goes for the lis pendens, whose filing was predicated on the allegations of the complaint. Accordingly, the court rejects the defense contention that the government's lis pendens was filed in bad faith. The court need not analyze *United States v. Veon*, 549 F.Sup. 274 (E.D.Cal.1982), to reach this conclusion. Although the parties discuss *Veon* extensively, with the defendants arguing that it controls and the government attempting to distinguish it, neither side was aware that the district court's order had been reversed in an unpublished opinion, 720 F.2d 685 (9th Cir. 1983). The parties' unawareness is understandable, because the reversal was not noted in *Shepard's Citations;* in any event, the district court's holding in *Veon* played no role in this court's examination of the bad faith issue.

### C. *Retroactivity*

The moving defendants' last attack on the lis pendens relies on the notion that the notice of pendency, as initially filed, relied on a legally insufficient complaint. According to the defendants, the government's later filing of a supplemental and amended complaint cannot retroactively validate the lis pendens. The moving defendants also argue that the government's filing of an amended notice of pendency does nothing to remedy the problem.

■ The government responds, and the court agrees, that the original complaint sufficed to support a notice of pendency. Accordingly, the government did not run afoul of the pronouncement of the New York Court of Appeals that "the complaint filed with the notice of pendency must be adequate unto itself; a subsequent, amended complaint cannot be used to justify an earlier notice of pendency," *5303 Realty Corp., supra*, 64 N.Y.2d at 320, 476 N.E.2d at 281, 486 N.Y.S.2d at 882.

■ The court's conclusion is necessitated, at a minimum, by the facial validity of the claim for a constructive trust pleaded in the original complaint. In all relevant particulars, the constructive trust claim in the original complaint is identical to the corresponding claim in the amended complaint, and suffices to support a lis pendens, since "the judgment demanded would affect the title to, or the possession, use or enjoyment of, real property," N.Y.Civ. Prac.L. & R. 6501 (McKinney 1980). Finally, there was nothing improper in the government's amendment of its lis pendens to reflect the deletion of certain properties in accordance with a stipulation. For all the foregoing reasons, the motion to cancel the lis pendens is denied.

### V. *The Chemical Complaint*

■ As discussed earlier, Chemical Bank brought an action seeking fore-

closure of the mortgages on three properties that are the subject of constructive trust claims by the United States. Chemical named the United States as a defendant and alleged jurisdiction under the Quiet Title Act, 28 U.S.C. § 2409a(a). Certain defendants in the Chemical action, not including the United States, have moved to dismiss on the ground that the Quiet Title Act does not confer subject matter jurisdiction over this type of dispute. The defendants acknowledged that their position was contrary to *United States v. Bedford Associates*, 657 F.2d 1300, 1316 (2d Cir.1981) (Quiet Title Act contemplates litigation against United States in mortgage foreclosure action where government claims interest in property), *cert. denied*, 456 U.S. 914, 102 S.Ct. 1767, 72 L.Ed.2d 173 (1982). Because *Bedford Associates* remains the law of the circuit, the motion to dismiss must be denied. Defendants have preserved their argument for rejection of *Bedford Associates*, which they may present, at the appropriate time, to the court of appeals.

The moving defendants also argued that Chemical's complaint must be dismissed because the Quiet Title Act was triggered only by the United States claim against the subject properties, and the United States action must be dismissed. The court has rejected the contention that the United States action should be dismissed; the motion to dismiss the Chemical action must similarly be rejected.

■ The moving defendants seek dismissal of the government's cross-claim for failure to state a claim upon which relief can be granted. In light of the related pleadings in the United States action, the moving defendants are well aware of what the government alleges in its cross-claim in the Chemical action. To the extent that the motion to dismiss the United States action was denied, the motion to dismiss the government's cross-claim in the Chemical action is similarly denied. (The court did grant the moving defendant's motion to dismiss the government's Banking Law claims, Part III(B)(5), *supra*, so the cross-claim shall no longer include a Banking

Law theory.) While the court cannot agree with the moving defendants that the government's cross-claim fails to state a claim, it is true that the cross-claim is no more than a bare bones pleading. The defendants would be well within their rights to seek a more definite statement, Fed.R.Civ.P. 12(e), and construing their motion to dismiss as a 12(e) application, it will be granted, and the government shall have twenty days from the date of this opinion to replead its cross-claim. And, for substantially the reasons discussed in connection with the government's lis pendens, Chemical's lis pendens will not be cancelled.

■ The moving defendants seek dismissal, under rule 9(b), of paragraph 31(c) of Chemical's amended complaint. Paragraph 31 alleges that the defendants were in default on their mortgages, and subparagraph (c) adds the allegation that financial statements and other writings of some of the realty companies were materially false and misleading. The moving defendants maintain that rule 9(b) requires more specificity, because this is an allegation of fraud. The court disagrees. As Chemical demonstrates, paragraph 31 charges a breach of contract, not a fraud. *See* Part III(A), *supra* (discussing *Bosio v. Norbay Securities, Inc.*, 599 F.Supp. 1563, 1570–71 (E.D.N.Y.1985), and the limitation of rule 9(b) to claims of fraud and mistake). Thus, the motion to dismiss pursuant to rule 9(b) is denied.

## VI. *Consolidation*

■ The United States has moved to consolidate the action it has brought with the Chemical and Maral Funding actions in which it is a defendant. The motion is opposed only by plaintiffs in the Chemical and Maral Funding actions, who argue that they have brought simple mortgage foreclosure actions and should not be caught up in a lengthy action not of their own making. While the court sympathizes with the opponents of consolidation, it finds that judicial economy would be enhanced by consolidation, and therefore grants the

government's motion to consolidate the three actions.

Rule 42(a) of the Federal Rules of Civil Procedure provides:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

In the context of a stockholders' suit, the Second Circuit has observed that consolidation may benefit the court and parties "by expediting pretrial proceedings, avoiding duplication and harassment of parties and witnesses, and minimizing expenditure of time and money by all persons concerned." *Garber v. Randell,* 477 F.2d 711, 714 (2d Cir.1973). On the other hand, when various parties' claims or defenses are substantially different, consolidation may be prejudicial. *Id.*

Here, the Chemical and Maral Funding actions would not exist but for the United States action and the facts underlying it. The defendants' task will be substantially eased by consolidation, and the Chemical and Maral Funding plaintiffs would not be unduly prejudiced. The trier of fact cannot determine the validity of the Chemical and Maral Funding claims without deciding the issues raised by the United States action, i.e., whether the government's claimed interest in the subject properties has merit. If it does, the Chemical and Maral Funding foreclosure claims will be bolstered. If it does not, the foreclosure claims will fail. Because the salient issues are so closely related, discovery and trial preparation will be expedited by consolidation. Thus, even the parties opposing consolidation might find themselves an an earlier trial, with less money spent on preparation therefor, after the actions are consolidated. Needless to say, a single resolution of the key issue will serve the interests of judicial economy far better than would a triptych of trials. Therefore, the government's mo-

tion is granted, and the three actions are consolidated.

## VII. *Conclusion*

In addition to the motions previously discussed, one of the defendant realty corporations, Coral Realty Corp., had moved to dismiss the United States action on the ground that it had not been served with process. That claim was abandoned at oral argument. Transcript of Oral Argument at 85. (The court notes that, while the transcript indicates that counsel for Rivieccio abandoned the motion, the court's notes state that counsel for Coral was the actual speaker.)

The parties are directed to appear at a status conference on May 22, 1987, in courtroom 5, at 2:15 p.m. The court will prepare a separate order referring the three consolidated actions to one magistrate for pretrial purposes.

SO ORDERED.